661 A.2d 1266

A. JARED SILVERMAN, CHIEF NEW JERSEY BUREAU OF SECURITIES, PLAINTIFF–APPELLANT, v. ROBERT GARY BERKSON, DEFENDANT–RESPONDENT.

Argued March 13, 1995—Decided August 2, 1995.

*Michael Pariser,* Deputy Attorney General, argued the cause for appellant (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

*Richard F. Horowitz,* a member of the New York bar, argued the cause for respondent (*Hellring, Lindeman, Goldstein & Siegal,* attorneys; *James A. Scarpone,* on the brief).

The opinion of the Court was delivered by

O'HERN, J.

 This appeal concerns the authority and power of a New Jersey agency investigating securities transactions involving New Jersey residents to issue a subpoena to a witness outside of the State's boundaries, and the corresponding authority and power of a New Jersey court to enforce such a subpoena. We hold that (1) the New Jersey Bureau of Securities (the Bureau) may subpoena a nonresident who has engaged in purposeful conduct expressly aimed at the New Jersey securities market; and (2) a New Jersey court may, consistent with due process principles, enforce such a subpoena.

I

The case arises from the Bureau's investigation of securities transactions involving New Jersey residents. The Bureau's com-

plaint states that it is conducting an investigation into the trading practices of L.C. Wegard & Co., Inc., and Hibbard Brown & Co., Inc., brokers-dealers registered with the Bureau, and of others. In connection with that investigation, the Bureau issued a subpoena to Robert Gary Berkson, requiring him to appear at the Bureau's office in Newark, New Jersey, to testify about certain securities transactions. Bureau personnel personally served Berkson with the subpoena at his home in East Hills, New York. Berkson declined to appear in response to the subpoena. Berkson's attorneys inform us that he "is not seeking to prevent the Bureau from conducting investigations or instituting proceedings; he is only seeking to prevent the unconstitutional use by the Bureau of an extraterritorial subpoena."

Pursuant to *N.J.S.A.* 49:3–68, the Bureau applied to the Superior Court for an order enforcing its subpoena. The Chancery Division granted an order of enforcement. It found that Berkson was an "artful manipulator" of the securities industry in New Jersey, that he "had repeated substantial contacts within New Jersey related to the Bureau's pending investigation," and that "[i]t was certainly reasonable to anticipate that Berkson, who was packaging * * * securities for sale to New Jersey investors, could have anticipated that he would be subject to jurisdiction within the State." The court concluded that "[t]o allow [Berkson] to reside in New York, do business in New Jersey more than minimally, and [affect] a well-regulated industry in New Jersey, without fear of investigation or subpoena, is offensive to traditional notions of fair play and substantial justice."

Berkson appealed. The Appellate Division reversed the Chancery Division's decision and ordered that the subpoena be quashed.

Pursuant to long-arm jurisdiction, New Jersey allows service of a summons and complaint to the fullest extent possible in order to afford due process of law, and maintenance of an action with this type of service of process does not offend notions of fair play and substantial justice. We agree with the trial judge that defendant had minimum contacts with this State, but while that may support

initiation of an action here by [the Bureau] against defendant, it does not countenance issuance of a subpoena to compel appearance and testimony.

\*     \*     \*     \*     \*     \*     .  \*     \*

Service of the subpoena here violates defendant's due process rights. A court cannot accord an agency's subpoena greater power than a subpoena issued in the name of the court via enforcement.

[276 *N.J Super.* 6, 9–10, 647 *A.2d* 160 (1994) (citations omitted).]

The court observed that "[u]nder authority of *R.* 4:11–5, non-party witnesses may be compelled to testify at a deposition in another state and the deposition may be used in an action here," and that "[i]t is this type of procedural format envisioned by *N.J.S.A.* 49:3–68 [the statute authorizing the Bureau to issue subpoenas]." *Id.* at 9, 647 *A.*2d 160. We granted the Bureau's petition for certification, 138 *N.J.* 268, 649 *A.*2d 1288 (1994).

While the Bureau's appeal was pending in this Court, the Bureau, in accordance with a suggestion in the Appellate Division opinion, moved in the Chancery Division, pursuant to *Rule* 4:11–5, for issuance of an open commission to take Berkson's testimony in New York. The Bureau made a similar motion for issuance of an open commission to take the testimony of Peter F. Hibbard in Maryland. The Bureau described Hibbard as "a broker-dealer at the heart of the Bureau's investigation." The Chancery Division entered orders directing issuance of open commissions to take the testimony of Berkson and Hibbard in their respective states. Following oral argument before this Court, the Appellate Division reversed the decision of the Chancery Division issuing those commissions to take the out-of-state testimony. *In re Berkson,* 280 *N.J.Super.* 180, 654 *A.*2d 1030 (1995). It reasoned that its opinion in *Silverman, supra,* 276 *N.J.Super.* 6, 647 *A.*2d 160, did not envision the use of *Rule* 4:11–5 to authorize the issuance of a commission to compel the testimony of an out-of-state resident "solely for investigative purposes." 280 *N.J.Super.* at 183–84, 647 *A.*2d 160.

II

The first question in this case is one of agency authority. Government agencies have only those powers the Legislature

confers on them. *General Assembly v. Byrne*, 90 *N.J.* 376, 393, 448 *A.*2d 438 (1982). Unless compelled to do otherwise, courts seek to avoid a statutory interpretation that might give rise to serious constitutional questions. *New Jersey Bd. of Higher Educ. v. Shelton College*, 90 *N.J.* 470, 478, 448 *A.*2d 988 (1982). Conventional wisdom might suggest, as the Appellate Division concluded in *Berkson, supra*, 280 *N.J.Super.* at 184, 654 *A.*2d 1030, that "[i]f the Legislature had wished to bestow such extraordinary extraterritorial authority upon the Bureau, it could have done so in plain language." That court's conclusion was "reinforced by the absence of any provision in New Jersey's version of the Uniform Securities Law affording a procedure for the Bureau to take out-of-state testimony of a non-resident witness." *Ibid.* The court noted that the 1985 version of the *Uniform Securities Act* (not adopted in New Jersey, New York, or Maryland) specifically provided for the taking of testimony in the state of a nonresident witness for the purpose of an investigation being conducted in another state. *Ibid.*

We understand that conferring extraterritorial subpoena authority on the Bureau is unusual; to our knowledge, no other jurisdiction grants such authority to its agencies except through reciprocal legislation, such as in the *Uniform Securities Act.* On the other hand, our courts have consistently recognized that

powers expressly granted to an administrative agency should be liberally construed so that the agency can fulfill the Legislature's purpose, *Barry v. Arrow Pontiac, Inc.*, 100 *N.J.* 57, 70 [494 *A.*2d 804] (1985), and that an agency's express authority is augmented by such incidental authority as may be reasonably necessary or appropriate to effectuate the expressly delegated authority, *New Jersey Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544, 562 [384 *A.*2d 795] (1978).

[*In re Solid Waste Util. Customer Lists*, 106 *N.J.* 508, 516, 524 *A.*2d 386 (1987).]

Thus, for example, in *Customer Lists* we inferred that even in the absence of an express authority conferred on it, the Board of Public Utilities might require solid-waste haulers to provide it with proprietary information, such as customer lists. *Ibid.* And finally we have, when the interpretation is reasonable, deferred to an agency's interpretation of its own enabling act. "Where a statute is silent or ambiguous, 'it is our clear duty to choose that

construction which will carry out the legislative intent of the statute as a whole * * *.' " *Accountemps v. Birch Tree Group, Ltd.*, 115 *N.J.* 614, 622, 560 *A.*2d 663 (1989) (extending regulation of employment practices to out-of-state agencies doing business in New Jersey) (quoting *Horwitz v. Reichenstein,* 15 *N.J.* 6, 8, 103 *A.*2d 881 (1954)).

In this case, the Bureau and respondent insist that the statute is neither silent nor ambiguous, and that the statute's language plainly resolves the issue in their favor. Respondent acknowledges that *N.J.S.A.* 49:3–68(a) authorizes the Bureau to conduct investigations within and without the State. The authority to subpoena in *N.J.S.A.* 49:3–68(b), however, is silent about whether a subpoena may be issued both within and without the State. Thus, according to respondent, the Legislature did not intend that a subpoena be issued outside of the State. The Bureau contends that the absence of any restriction implies that the Legislature intended that the Bureau's subpoena power reach the limits of the Constitution.

Federal courts have required a clear expression from Congress before authorizing extraterritorial service of an investigative subpoena. *See, e.g., Commodity Futures Trading Comm'n v. Nahas,* 738 *F.*2d 487, 492–93 (D.C.Cir.1984). However, entry upon the territory of another nation is far more intrusive than the service of a subpoena in another state. We are not inclined to create a presumption against any legislative intent that the subpoena power extend beyond our borders. We realize there may have been a settled understanding that under judicial rules of practice and procedure in New Jersey a subpoena could not be served outside New Jersey. Recall, however, Justice Brennan's concurring opinion in *Burnham v. Superior Court,* 495 *U.S.* 604, 631, n. 3, 110 *S.Ct.* 2105, 2122, n. 3, 109 *L.Ed.*2d 631, 652, n. 3 (1990), noting that it should not be assumed "that there is no further progress to be made and that the evolution of our legal system, and the society in which it operates, ended 100 years ago."

Had the Legislature resolved this issue with sufficient clarity, there would be no debate about the agency's powers. We believe, however, that general principles of administrative law suggest that the Legislature intended the agency to have the authority necessary to fulfill its function to investigate, within and without the State, securities transactions involving New Jersey residents. We must then turn to the questions of constitutional jurisdiction.

## III

In an analogous context, a federal court wrote: "The jurisdictional questions posed by this case are peculiarly complex because the jurisdiction of three institutions is at issue * * *." *Federal Trade Comm'n v. Compagnie de Saint–Gobain–Pont–à–Mousson (SGPM )*, 636 *F*.2d 1300, 1315 (D.C.Cir.1980). The questions here involve: (1) the jurisdiction of a state to exercise authority over a nonresident; (2) the jurisdiction of an administrative agency of such a state to exercise that authority in the name of the state through the issuance of an administrative order (a subpoena) to the resident of a foreign state; and (3) the jurisdiction of a court of the issuing state to enforce such a subpoena when the party subpoenaed is not physically present in the issuing state. *Cf. id.* at 1315–22 (using similar approach to decide validity of service of federal agency subpoena on French corporation by registered mail). We shall consider those questions separately. (We refer to a "state" as a state of the United States, unless we identify the state as being a foreign nation.)

### A.

#### *Does a state have jurisdiction to exert authority over nonresidents?*

A lawsuit is not the only manner in which a state may exert authority over a nonresident. The landmark case of *Pennoyer v. Neff*, 95 *U.S.* 714, 733, 24 *L.Ed.* 565, 572 (1878), held that the judgment of a court lacking personal jurisdiction violated the Due

Process Clause of the Fourteenth Amendment. Perhaps influenced by Austinian concepts of law, *Pennoyer* held that jurisdiction to adjudicate derived from a "power" theory of a state's "exclusive jurisdiction and sovereignty over persons and property within its territory." 95 *U.S.* at 722, 24 *L.Ed.* at 568. It drew on principles of "public law" derived from Justice Story's *Commentaries on the Conflict of Laws*:

> [N]o State can exercise direct jurisdiction and authority over persons or property without its territory. Story, Confl.L., ch. 2; Wheat.Int.L., pt. 2, ch. 2. The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others. And so it is laid down by jurists, as an elementary principle, that the laws of one State have no operation outside of its territory, except so far as is allowed by comity; and that no tribunal established by it can extend its process beyond that territory so as to subject either persons or property to its decisions. "Any exertion of authority of this sort beyond this limit," says Story, "is a mere nullity, and incapable of binding such persons or property in any other tribunals." Story, Confl.L., sec. 539.

> [95 *U.S.* at 722–23, 24 *L.Ed.* at 568–69.]

> Later years, however, saw the weakening of the Pennoyer rule. In the late 19th and early 20th centuries, changes in the technology of transportation and communication, and the tremendous growth of interstate business activity, led to an "inevitable relaxation of the strict limits on state jurisdiction" over nonresident individuals and corporations. *Hanson v. Denckla*, 357 *U.S.* 235, 260, 78 *S.Ct.* 1228 [1243], 2 *L.Ed.2d* 1283 (1958) (Black, J., dissenting).

> [*Burnham*, *supra*, 495 *U.S.* at 617, 110 *S.Ct.* at 2114, 109 *L.Ed.2d* at 643.]

The U.S. Supreme Court formerly resorted to various fictions, such as implied consent. *E.g., Hess v. Pawloski*, 274 *U.S.* 352, 47 *S.Ct.* 632, 71 *L.Ed.* 1091 (1927). Eventually, in *International Shoe Co. v. Washington*, 326 *U.S.* 310, 66 *S.Ct.* 154, 90 *L.Ed.* 95 (1945), the Court cast those fictions aside and held that a state court's assertion of personal jurisdiction does not violate the Due Process Clause if the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 326 *U.S.* at 316, 66 *S.Ct.* at 158, 90 *L.Ed.* at 102 (quoting *Milliken v. Meyer*, 311 *U.S.* 457, 463, 61 *S.Ct.* 339, 343, 85 *L.Ed.* 278, 283 (1940)). The concomitant understanding of legislative jurisdiction was similarly modified.

Until recently, it was unclear whether the due process limitation upon a state's extraterritorial application of law mirrored the due process analysis for determining the limits of a state court's judicial jurisdiction. The concepts are closely linked, and commentators have suggested that essentially the same principle should be applied with reference to both situations.

[*McCluney v. Jos. Schlitz Brewing Co.*, 649 *F.*2d 578, 581 (8th Cir.), *aff'd,* 454 *U.S.* 1071, 102 *S.Ct.* 624, 70 *L.Ed.*2d 607 (1981).]

In *Allstate Insurance Co. v. Hague,* 449 *U.S.* 302, 312–13, 101 *S.Ct.* 633, 640, 66 *L.Ed.*2d 521, 531 (1981), the Court said that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."

That elucidation mirrors the principle of prescriptive jurisdiction among nations. "It has long been settled law that a country can regulate conduct occurring outside its territory which causes harmful results within its territory." *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 *F.*2d 909, 922 (D.C.Cir.1984). Similarly, a state may proscribe conduct occurring outside its borders. In the criminal context, "[t]he common law adopts as the principal basis of jurisdiction a territorial theory of jurisdiction over crimes: a state has power to make conduct or the result of conduct a crime if the conduct takes place or the result happens within its territorial limits." 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 2.9(a), at 180 (1986) (footnotes omitted). The New Jersey Code of Criminal Justice reflects that understanding of a state's jurisdiction. A person may be convicted under the laws of this State of an offense if "[e]ither the conduct which is an element of the offense or the result which is such an element occurs within this State." *N.J.S.A.* 2C:1–3a(1).

On the civil side, "[a] State's power over its own citizens should extend to protection of its own citizens' rights when dealing with others even though there may be incidental effects in other jurisdictions." *Instructional Sys., Inc. v. Computer Curriculum Corp.,* 130 *N.J.* 324, 370, 614 *A.*2d 124 (1992). Because the power

to exert authority over nonresidents exists as a matter of sovereignty, we turn to the next question.

### B.

*May a state authorize its agencies to subpoena a nonresident to testify or produce documents in the forum state?*

The Appellate Division reasoned that because a judicial subpoena may not be served beyond the State's boundaries, a court may not enforce an administrative subpoena issued beyond the State's boundaries. We find, however, that the power to issue a subpoena and the power to enforce a subpoena are different incidents of sovereignty, and such powers are not necessarily identical. A federal court considering a related issue explained that "[a] federal court's jurisdiction [to enforce a grand jury subpoena] is not determined by its power to issue a subpoena; its power to issue a subpoena is determined by its jurisdiction." *In re Marc Rich & Co., A.G.,* 707 *F.*2d 663, 669 (2d Cir.), *cert. denied,* 463 *U.S.* 1215, 103 *S.Ct.* 3555, 77 *L.Ed.*2d 1400 (1983).

A subpoena is simply "a command to appear at a certain time and place to give testimony upon a certain matter." *Black's Law Dictionary* 1279 (5th ed. 1979). "[T]he very etymology of the word 'subpoena' signifies 'an order with a penalty for disobedience.'" *In re Simon,* 297 *F.* 942, 945 (2d Cir.1924) (quoting *Burns v. Superior Court,* 140 *Cal.* 1, 73 *P.* 597, 598 (1903)). Under our law,

the acquisition of jurisdiction over a foreign corporation through the process of subpoena is governed by the same principles of jurisdiction which apply in the case of civil litigation involving the process of a summons. Both a subpoena and a summons are forms of judicial process by way of orders of the court resulting in potential sanctions for disobedience.

[*In re Subpoena Duces Tecum, Inst'l Management Corp.,* 137 *N.J.Super.* 208, 216, 348 *A.*2d 792 (App.Div.1975).]

The question is whether a different principle should apply when a state agency issues an order in the form of a subpoena.

Cases analyzing a federal court's authority to enforce subpoenas issued by federal agencies to foreign corporations have first

examined the agency's statutory authority to issue the subpoena extraterritorially. Thus, in *Nahas, supra,* 738 *F*.2d 487, the court found that the authority of the Commodity Futures Trading Commission was, at that time, strictly limited by 7 *U.S.C.* § 15 to requiring the attendance of witnesses and the production of records "from any place in the United States or any State at any designated place of hearing." [1] The *Nahas* court relied on a presumption that federal legislation is meant to apply only within the territorial jurisdiction of the United States, and it would not infer the existence of the power to serve an investigative subpoena on a foreign national in a foreign country. *Id.* at 493. The court emphasized, however, that "this case does not pose a question about the authority of Congress; rather, it poses a question about the congressional intent embodied in 7 U.S.C. § 15." *Id.* at 495.

A federal court will enforce an investigative subpoena issued to a foreign national when it has personal jurisdiction over the subpoenaed party. *In re Sealed Case (Iran–Contra Investigation),* 832 *F*.2d 1268, 1272 (D.C.Cir.1987). A federal court has personal jurisdiction over an individual or business concern with respect to activities or effects within the United States if that entity has certain minimum contacts with the United States. *Id.* at 1273 (citing *International Shoe, supra,* 326 *U.S.* at 316, 66 *S.Ct.* at 158, 90 *L.Ed.* at 102). Thus, in *Marc Rich, supra,* 707 *F*.2d 663, the court found that a Swiss trading company doing business in the United States could be required to respond to a grand jury subpoena served on a representative within the forum. (Jurisdiction over a representative of the subpoenaed nonresident is insufficient; the nonresident entity must itself have the requisite contacts. *Sealed Case (Iran–Contra Investigation), supra,* 832 *F*.2d at 1272–73.)

---

[1] 7 *U.S.C.* § 15 has since been amended to allow that agency to require the attendance of witnesses and the production of records "from any place in the United States, any State, or any foreign country or jurisdiction at any designated place of hearing."

Although the analogy is less precise in the domestic context than in the international context (after all, the federal government unquestionably may issue process across state lines), we do note that federal courts analyzing issues of enforcement of nationwide subpoenas by federal agencies have drawn a distinction between the agency's statutory authority to issue the subpoena and the corresponding grant of jurisdiction to a federal court to enforce the subpoena. Although a federal district court's process is generally confined to the territorial limits of the state in which it sits, extraterritorial service of process is proper "when authorized by a statute of the United States." *Fed.R.Civ.P.* 4(k)(1)(D). The Federal Trade Commission, for example, has the authority to compel the attendance and testimony of witnesses "from any place in the United States, at any designated place of hearing." 15 *U.S.C.* § 49. In *Federal Trade Commission v. Browning*, 435 *F.*2d 96 (D.C.Cir.1970), the court upheld the FTC's statutory power to subpoena witnesses in any district in which an inquiry is being carried on, and the corresponding district court's power to enforce such a subpoena. In *Federal Election Commission v. Committee to Elect Lyndon La Rouche*, 613 *F.*2d 849, 858 (D.C.Cir.1979), *cert. denied*, 444 *U.S.* 1074, 100 *S.Ct.* 1019, 62 *L.Ed.*2d 755 (1980), the court upheld the authority of the FEC (with which Congress has vested "broad powers of compulsory process," *id.* at 860) to issue nationwide subpoenas, giving it substantial leeway in selecting its place of inquiry for subpoena-enforcement purposes.

We believe that, consistent with the principles of *International Shoe*, a State agency may require the appearance of witnesses from outside New Jersey. It is true that there is a difference between this case and *International Shoe*. "The distinction between service of notice and service of compulsory process is a crucial one under principles of both domestic and international law." *SGPM, supra*, 636 *F.*2d at 1311. *International Shoe* held only that if a cause of action arises within a state, and if it is fair to make a party come into the state to defend, then the action may proceed under pain of default judgment. The forum state does

not care whether the defendant comes in or not. It does not order the party to attend; it does not tell the defendant to do anything. The conclusion does not inevitably follow from *International Shoe* that if a state may exercise personal jurisdiction pursuant to long-arm service, it may exercise its jurisdiction to subpoena to the same limits. A subpoena compels a person to do something. Long-arm service of process is a state's assertion of jurisdiction, not over a person, but over a cause of action. Such a nonresident is afforded the opportunity to defend, but need not do so—the consequence being a judgment entitled to full faith and credit.

Still, we believe that the measures of sovereign power are ultimately the same. The concepts of "jurisdiction to prescribe" ("the authority of a state to make its law applicable to persons or activities") and "jurisdiction to adjudicate" ("the authority of a state to subject particular persons or things to its judicial process"), 1 *Restatement (Third) of Foreign Relations Laws of the United States* Part IV, at 231 (1987), are closely linked. Under principles of international law, "a nation having some 'basis' for jurisdiction to prescribe law" may do so unless "exercising that jurisdiction 'with respect to a person or activity having connections with another [nation] * * * is unreasonable.'" *Hartford Fire Ins. Co. v. California,* — *U.S.* ——, ——, 113 *S.Ct.* 2891, 2921, 125 *L.Ed.*2d 612, 653 (1993) (Scalia, J., dissenting) (quoting *Restatement (Third) of Foreign Relations, supra,* § 403(1)). Is not that articulation of the power to prescribe (albeit expressed in the international context) almost identical to *International Shoe*'s delineation of the jurisdiction to adjudicate consistent with due process principles? *McCluney, supra,* 649 *F.*2d at 581. See *Institutional Management, supra,* 137 *N.J.Super.* at 216, 348 *A.*2d 792 (equating the jurisdiction to subpoena with the jurisdiction to serve initial process).

Respondent relies on *Minder v. Georgia,* 183 *U.S.* 559, 562, 22 *S.Ct.* 224, 225, 46 *L.Ed.* 328, 330 (1902), for the proposition that "the lawmaking power of the state is powerless to make any provision which would result in the compulsory attendance of the

[out-of-state] witnesses \* \* \*." *Minder* was decided long before *International Shoe,* but even then it would have been only marginally relevant to the issues here. The issue in *Minder* was whether a criminal defendant in Georgia had received a fair trial when he could not subpoena material defense witnesses who were outside Georgia. At that time, Georgia law made no provision to subpoena out-of-state witnesses. (That issue has since been addressed by the *Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings,* adopted in New Jersey as *N.J.S.A.* 2A:81–18 to –23.)

The question in this case is not whether a state may compel attendance in the forum of any out-of-state witness, but rather whether it may require the attendance of one who has purposely availed himself of the privilege of entering regulated securities markets in the forum state. Finally, personal service of the subpoena within the territorial boundaries of the issuing state is not a prerequisite to a valid administrative order to appear. In his concurring opinion in *SGPM, supra,* 636 *F.*2d at 1327, Judge McGowan observed that Congress had explicitly authorized extraterritorial service by registered mail of civil investigative demands in antitrust matters. *See also id.* at 1321 (majority opinion) (discussing agency's subject matter jurisdiction and technique of service, and investigative demands and issues of enforcement jurisdiction). We agree that absent "purposeful availment," the jurisdiction to proscribe conduct in another forum would not suffice to confer jurisdiction to enforce a civil investigative demand in the territory of another state. *Cf. id.* at 1316 (recognizing that a nation having jurisdiction to prescribe a rule of law does not necessarily have jurisdiction to enforce it).

## C.

*What is the proper role of a state court in enforcing such an administrative subpoena?*

Courts play a critical role in this administrative process. First, judicial involvement ensures administrative due process. "The

system of judicial enforcement is designed to provide a meaningful day in court for one resisting an administrative subpoena." *United States v. Security State Bank & Trust,* 473 *F.*2d 638, 642 (5th Cir.1973). "Bifurcation of the power, on the one hand of the agency to issue subpoenas and on the other hand of the courts to enforce them, is an inherent protection against abuse of subpoena power." *United States v. Bell,* 564 *F.*2d 953, 959 (Temp.Emer.Ct.App.1977). Second, judicial enforcement clarifies the rights arising from specific disputes in matters concerning both the general public and the individuals involved. "One of the functions of a court is to compel a party to perform a duty which the law requires at his [or her] hands." *Interstate Commerce Comm'n v. Brimson,* 154 *U.S.* 447, 487, 14 *S.Ct.* 1125, 1137, 38 *L.Ed.* 1047, 1061 (1894). Agency law invokes enforcement "in the customary forms of judicial proceedings, because its effect may be to aid an administrative or executive body in the performance of duties legally imposed upon it * * *." *Ibid.* No question of contempt may arise until all issues are determined adversely to a party and that party has refused to obey a final order of the court. 154 *U.S.* at 488–89, 14 *S.Ct.* at 1137–38, 38 *L.Ed.* at 1061.

For those reasons of fairness and efficiency of administration, "federal courts have drawn a sharp distinction between agency power to *issue* subpoenas and judicial power to *enforce* them." *United States v. Hill,* 694 *F.*2d 258, 263 (D.C.Cir.1982). Federal courts enforcing administrative subpoenas are strictly limited by their jurisdictional grants. On the other hand, the Legislature has given our courts plenary jurisdiction to enforce the agency's subpoena. *N.J.S.A.* 49:3–68.

Respondent insists that because New Jersey's courts have not the power to issue subpoenas beyond state lines, they have not the power to enforce subpoenas issued to out-of-state witnesses by agencies of the State. Citing *King v. Hochberg,* 17 *N.J.Super.* 533, 86 *A.*2d 307 (Ch.Div.1952), respondent contends that New Jersey courts do not have the authority to compel the testimony of nonresident witnesses. Our Court Rules do limit the power to

compel attendance of witnesses at a court hearing to those witnesses who may be served "within the State of New Jersey." *R.* 1:9–4. And our Court Rules authorizing the use in this State of the deposition of a non-party witness in a foreign state apply only if the foreign state has a reciprocal procedure. Sylvia B. Pressler, *Current N.J.Court Rules,* comment on *R.* 4:11–5 (1995). We do not believe that those Rules resolve the issue of *agency* power. The Appellate Division reasoned that "[a] court cannot accord an agency's subpoena greater power than a subpoena issued in the name of the court via enforcement." 276 *N.J.Super.* at 10, 647 *A.*2d 160 (citing *Doumani v. Casino Control Comm'n,* 614 *F.Supp.* 1465, 1471 (D.N.J.1985)). *Doumani* does not establish that proposition, but only that an agency's authority to regulate nonresident interests may not exceed the due process limits that restrain courts. 614 *F.Supp.* at 1471.

The issue, then, is not what the Court Rules permit or do not permit New Jersey courts to do. The issue is whether the State may grant an agency extraterritorial authority over nonresident witnesses consistent with due process principles. If the Legislature grants such power, the proper role of a court under *N.J.S.A.* 49:3–68 is to ensure that principles of due process and comity between states have been observed in the issuance of the subpoena.

In that connection, we turn first to the provisions of *Rule* 1:9–6. That Rule sets forth the procedures for enforcement of a subpoena of a public officer or agency. Any application for compliance shall be on notice to the party subject to subpoena. Because the Bureau's enabling act does not specify the sanction for failure of a person to obey a subpoena, we may infer that only the usual procedures for relief to litigants under *Rule* 1:10–3 would be available. See *In re Daniels,* 118 *N.J.* 51, 60, 570 *A.*2d 416 (outlining the difference between criminal contempt and civil contempt in the form of relief to litigants), *cert. denied,* 498 *U.S.* 951, 111 *S.Ct.* 371, 112 *L.Ed.*2d 333 (1990).

Because the party subpoenaed is, by definition, not within the jurisdiction, an order of confinement to achieve compliance would not be appropriate. See *In re Bridge,* 120 *N.J.Super.* 460, 468–69, 295 *A.*2d 3 (App.Div.) (discussing civil sanctions and confinement to secure compliance with order), *certif. denied.* 62 *N.J.* 80, 299 *A.*2d 78 (1972), *cert. denied,* 410 *U.S.* 991, 93 *S.Ct.* 1500, 36 *L.Ed.*2d 189 (1973). A court granting relief to an agency seeking civil sanctions to enforce a subpoena would consider the provisions of *N.J.S.A.* 2A:10–5 (maximum $50 fine as penalty) and any payment to the aggrieved party authorized under *Rule* 1:10–3.

In considering other interests of due process and comity, a court may be guided by the familiar principles of international relations that seek to minimize "infringements upon foreign sovereignty." *SGPM, supra,* 636 *F.*2d at 1324. In deciding whether to exercise enforcement jurisdiction, courts should "balance the interests it seeks to protect against the interests of any other sovereign that might exercise authority over the same conduct." *Republic of Phil. v. Westinghouse Elec. Corp.,* 43 *F.*3d 65, 76 (3d Cir.1994). Because each sovereign has an interest in the welfare of its citizens, we would add, in this context, that a court must consider (1) the extent and nature of the hardship that inconsistent enforcement actions would impose on the person subpoenaed; (2) the extent to which the required conduct is to take place in the territory of the other state; (3) the residence of the person subpoenaed; and (4) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state. To minimize the degree of intrusion on the sovereignty of the other state, we insist that in the future the process be served only by those authorized to do so under the laws of that state.

There is a concern that the State's efforts to subpoena an out-of-state witness and the enforcement proceedings of the court will be pointless because there will be no effective way thereafter to enforce the subpoena in a New Jersey court without the physical presence of the party in the forum. Respondent reminds us that

" '[t]he doctrine that a court of equity will not do a useless or vain thing is an ancient maxim of hornbook learning and general recognition.' 55 N.Y.Jur.2d *Equity* § 106 (1994)," and cites *Fiedler v. Coast Finance Co., Inc.*, 129 *N.J.Eq.* 161, 169, 18 *A.*2d 268 (E. & A.1941) ("Decrees that would in the final result be nugatory should not be made.").

We agree that nugatory decrees should not be made. In the normal course of events, "[w]hen the process of adjudication is complete, all judgments are handed over to the litigant or executive officers, such as the sheriff or marshal, to execute. Steps which the litigant or executive department lawfully takes for their enforcement are a vindication rather than a usurpation of the court's power." *United States v. Morton Salt Co.*, 338 *U.S.* 632, 641, 70 *S.Ct.* 357, 363, 94 *L.Ed.* 401, 410 (1950). The sheriff of a New Jersey county has no authority to enter New York. However, it does not follow that an adjudication of civil contempt under our Court Rules is a fruitless exercise; such civil sanctions are entitled to full faith and credit in the foreign jurisdiction. *New York v. Sacco*, 242 *N.J.Super.* 699, 577 *A.*2d 1333 (Law Div.1990); *Gedeon v. Gedeon*, 630 *P.*2d 579 (Colo.1981); *Robinson v. Robinson*, 487 *So.*2d 67 (Fla.Dist.Ct.App.1986). By later resort to the courts of the other state, the subpoenaed witness will be further guaranteed due process of law. In considering whether to accord full faith and credit to a judgment of another state, a forum state must consider whether the state rendering the judgment had jurisdiction over the defendant. *May v. Anderson*, 345 *U.S.* 528, 533, 73 *S.Ct.* 840, 843, 97 *L.Ed.* 1221, 1226–27 (1953).

## IV

Fifty years ago, the U.S. Supreme Court decided that the assertion of jurisdiction by the courts of one state over a defendant from another state does not violate the Due Process Clause of the Fourteenth Amendment if the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

justice.' " *International Shoe, supra,* 326 *U.S.* at 316, 66 *S.Ct.* at 158, 90 *L.Ed.* at 102 (quoting *Milliken, supra,* 311 *U.S.* at 463, 61 *S.Ct.* at 342, 85 *L.Ed.* at 283). Since *International Shoe,* state and federal courts have asserted original jurisdiction over residents throughout the United States, subject to the "minimum contacts" test. We believe that our decision today comports with the *International Shoe* doctrine and with the expanding role of states in the federalist system. Berkson can easily respond to the Bureau subpoena; trains, ferries, subways, buses, taxis, and private-passenger vehicles regularly cross the Hudson River to New Jersey. Moreover, the record suggests that he has been in New Jersey on several occasions in connection with the transactions that are the subject of the Bureau's investigation.

As the federal government reduces its regulatory role and state governments increase theirs, the need to develop coherent principles of cooperation among states intensifies. Ultimately, the U.S. Supreme Court may review this decision or a similar one. That review will close the circle and return the issue to the Court that decided *International Shoe.* In the meantime, a form of horizontal federalism, one in which states cooperate with each other in the discharge of their governmental duties, is both timely and reasonable. An example of such cooperation is the *Uniform Child Custody Jurisdiction Act,* codified in New Jersey at *N.J.S.A.* 2A:34–28 to –52, which defines the roles of states in enforcing conflicting claims to child custody.

Practical problems will inevitably arise concerning the extraterritorial enforcement of subpoenas. One response would be to wait until the state legislatures have adopted appropriate laws. The need for such legislation extends throughout the United States. Organizations such as the Commissioners on Uniform State Laws and the American Law Institute are well situated to propose uniform or model laws for adoption in every state. See Pamela Jiminez, Comment, *International Securities Enforcement Cooperation Act and Memoranda of Understanding,* 31 *Harv.Int'l L.J.* 295 (1990) (providing examples of such compacts among nations).

Our decision may serve to stimulate the adoption of such legislation. We believe, however, that we should respond to the issue now.

To sum up, we hold that it is reasonable to infer that the Legislature would, consistent with principles of due process, intend that the Bureau's administrative power to compel the attendance of witnesses be coextensive with its substantive mandate to investigate securities transactions "within or outside of this State." *N.J.S.A.* 49:3-68(a). Consistent with principles of due process, that authority shall be limited to subpoenaing witnesses who have purposefully availed themselves of the privilege to enter the New Jersey securities market. Before enforcing an agency subpoena, a court must determine that the party subpoenaed has engaged in such deliberate conduct. A court should consider the fairness to the witness and whether other available methods of discovery, such as videotaped depositions in the foreign state, would adequately serve the agency's needs without the inconvenience to the witness of appearing in New Jersey. Although this case presents the circumstance of a witness having to travel only a short distance from New York to Newark, there will be cases in which witnesses will need to travel from distant jurisdictions. In considering any civil sanctions to be imposed, a court shall not impose an order of arrest and shall limit monetary sanctions in accordance with the relevant principles applicable to *Rule* 1:10-3 procedures.

We express no opinion on the wisdom or fairness of the Bureau's policy of issuing subpoenas to those outside New Jersey, or the extent to which such a policy affects the relations between New Jersey and other states. We do not believe, however, that the limited breadth that we give to such subpoena power will offend principles of comity. Our decision does not authorize restraints on the liberty interests of persons outside New Jersey's borders. Finally, we acknowledge that the matter is entirely within the legislative ambit and would best be resolved there.

The judgment of the Appellate Division is reversed. The matter is remanded to the Chancery Division for further proceedings in accordance with this opinion.

*For reversal and remandment*— Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN-6.

*Opposed* —None.