729 S.E.2d 200

**STATE of West Virginia ex rel. Darrell V. McGRAW, Jr., Attorney General, Plaintiff Below, Petitioner**

v.

**The Honorable Charles E. KING, Jr., Judge, Circuit Court of Kanawha County; Fast Auto Loans Inc., a Virginia corporation; Community Loans of America, Inc., a Georgia corporation; and Robert I. Reich, President and Chief Executive Officer of Fast Auto Loans, Inc., and Community Loans of America, Inc., Defendants Below, Respondents.**

No. 11–1644.

Supreme Court of Appeals of West Virginia.

Submitted April 25, 2012.

Decided June 12, 2012.

Darrell V. McGraw, Attorney General, Norman Googel, Esq., Assistant Attorney General, Charleston, WV, for Petitioner.

Anthony J. Majestro, Esq., Powell & Majestro, PLLC, Charleston, WV, for Amici Curiae Attorneys General.

David Allen Barnette, Esq., Stephen R. Crislip, Esq., Vivian H. Basdekis, Esq., Jackson Kelly, PLLC, Charleston, WV, for Respondents.

PER CURIAM:

The petitioner, Darrell V. McGraw, Attorney General for the State of West Virginia, seeks a writ of prohibition directed to the respondent, Charles E. King, Jr., Judge of the Circuit Court of Kanawha County, to enjoin enforcement of the August 15, 2011, order herein dismissing the petitioner's action seeking enforcement of certain investigative subpoenas issued against the respondents, Fast Auto Loans, Inc., a Virginia corporation; Community Loans of America, Inc., a Georgia corporation; and Robert I. Reich, the president and chief executive office of both corporations. After careful review of the record presented, the briefs and arguments of the parties as well as the brief of the *amici curiae* [1] we deny the re-

---

**1.** This Court recognizes and appreciates the contributions to the consideration of this case made by *amici curiae*, consisting of the Attorneys General of Arkansas, Arizona, Colorado, Georgia, Hawaii, Illinois, Iowa, Kansas, Kentucky, Maryland, Idaho, Maryland, Massachusetts, Missouri, Montana, Nevada, New Mexico, New Hampshire, North Dakota, Oklahoma, South Dakota, Vermont, Washington, the West Virginia Education Association, as well as the West Virginia

quested writ of prohibition for the reasons contained herein.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The petitioner, Darrell V. McGraw, is the Attorney General for the State of West Virginia. Respondent Charles E. King, Jr., is a judge of the Circuit Court of Kanawha County. Respondent Fast Auto Loans, Inc. (hereinafter "FAL"), is a Virginia corporation. Respondent Community Loans of America, Inc. (hereinafter CLA) is a Georgia corporation. Respondent Robert I. Reich (hereinafter "Reich"), is the chief executive officer of both FAL and CLA and is a resident of the state of Georgia.

FAL and CLA are non-resident corporations that do not have offices or places of business in West Virginia. Their business consists of loaning money to people who own motor vehicles. The loan is secured by a lien on the borrower's motor vehicle. These types of loans are often referred to as "title loans." It is the position of the Attorney General that these loans are not authorized by West Virginia law, that West Virginia residents obtain these loans in Virginia, and that FAL and CLA attempt to collect on

some of the delinquent title loans in West Virginia.

The Attorney General's Consumer Protection Division received three complaints by West Virginia residents regarding the collection of these title loans provided by respondents, FAL and CLA. The complaints were not about the loans themselves; rather the complaints were about telephone calls seeking information from and about the debtors. The first complaint was received on February 16, 2007. The second complaint was received on March 16, 2009, by a father whose daughter, a resident of Virginia, was the recipient of the respondent FAL's loan. The final complaint was received on September 9, 2010. The manner of the calls, according to the Attorney General, violated the West Virginia Consumer Protection Act (W. Va.Code § 46A–1–101, *et seq.*)

These complaints triggered an investigation by the Attorney General into the legality of these collection calls. As part of his investigation, the Attorney General on March 2, 2011, issued an administrative subpoena *duces tecum* to the respondents, seeking disclosure of documents regarding loans made to West Virginia residents.[2] The authority of the Attorney General to issue this type of investigative subpoena may be found in W. Va.Code § 46A–7–104(1) (1974).[3] The sub-

---

Division of Financial Institutions and the Office of Consumer Protection for the State of Hawaii.

**2.** The subpoena *duces tecum* was double-spaced and 11 pages in length. It asked for 29 enumerated items, including but not limited to documents relating to all civil actions filed against the respondents by any state or federal regulatory agency; all communications between the respondents and the Federal Trade Commissioner ("FTC"), Federal Deposit Insurance Corporations ("FDIC"), the Internal Revenue Service ("IRS") or any other state or federal loan regulators; a diagram of the corporate organization of the respondents; details about each loan made to West Virginia residents, including the amount of each loan, the interest on each loan, the fees associated with each loan and the amount actually collected on each loan; all forms used in making, approving, generating, processing, servicing or collecting on each loan as well as a list of all West Virginia residents who accounts are, or have ever been, delinquent.

**3.** (1) If the attorney general has probable cause to believe that a person has engaged in an act which is subject to action by the attorney gener-

al, he may, and shall upon request of the commissioner, make an investigation to determine if the act has been committed and, to the extent necessary for this purpose, may administer oaths or affirmations, and, upon his own motion or upon request of any party, may subpoena witnesses, compel their attendance, adduce evidence, and require the production of any matter which is relevant to the investigation, including the existence, description, nature, custody, condition and location of any books, records, documents or other tangible things and the identity and location of persons having knowledge of relevant facts, or any other matter reasonably calculated to lead to the discovery of admissible evidence.

(2) If the person's records are located outside this State, the person at his option shall either make them available to the attorney general at a convenient location within this State or pay the reasonable and necessary expenses for the attorney general or his representative to examine them at the place where they are maintained. The attorney general may designate representatives, including comparable officials of the state

poena requested compliance with the disclosure of documents by March 21, 2011. This investigative subpoena *duces tecum* was served upon the respondents by certified mail, return receipt requested. FAL's subpoena was mailed to an address in Georgia. Neither FAL nor CLA responded to the subpoenas with documents. Instead, each had asked for more time, to April 4, 2011, to respond to the State's requests.

On April 5, 2011, the respondents filed the affidavit of Terry E. Fields, the chief financial officer of FAL. This affidavit stated that FAL was not registered to transact business within West Virginia. Further, Mr. Fields testified that FAL did not have any offices or employees within this state. The respondents indicated that it was their position that they were under no obligation to produce the documents requested by the Attorney General in the investigative subpoena.

On April 28, 2011, the Attorney General filed in the Circuit Court of Kanawha County an action seeking enforcement of the previously issued subpoena *duces tecum*. On April 28, 2011, the respondent, Judge Charles E. King, Jr., issued a Rule to Show Cause directed to FAL, CLA and the respondent, Robert I. Reich, setting a hearing for June 8, 2011, on the issue of whether the respondents needed to comply with petitioner's request for documents. The respondents filed a response indicating that the subpoena *duces tecum* was invalid and moved that it should be quashed because the Attorney General ignored procedural requirements for the issuance of an out-of-state subpoena. The respondents contended that the Attorney General should have attempted to domesticate the subpoena in the state of incorporation or residence for each respondent instead of merely mailing the self-issued subpoena to the respondents. The respondents also raised the issue of whether the

Attorney General was properly before the West Virginia courts for enforcement.

A hearing was held before the respondent Judge King on June 8, 2011. At the conclusion of the hearing the circuit court requested that each party submit proposed findings of fact, conclusions of law and a proposed order for the court's review and entry. On August 15, 2011, the circuit court ruled that the investigative subpoena was procedurally defective and therefore invalid, and denied the petitioner's request for enforcement of the subpoena.

■ In denying the petitioner's request for judicial enforcement of the subpoena, the circuit court held that the petitioner had failed to abide by the requirements for issuance of and service of subpoenas on out-of-state entities. Citing Syl. pt. 1, *State ex. rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), the circuit court found that in order to obtain judicial enforcement of the investigative subpoena, the petitioner had to prove five "tightly drawn" requirements, including (1) that the subpoena was issued for a legislatively authorized purpose; (2) that the information sought is relevant to the authorized purpose; (3) that the information sought is not already in the petitioner's possession; (4) that the information described is adequately described and (5) that proper procedures were employed in issuing the subpoena.

■ The circuit court reasoned that it was only after these factors were satisfied that the subpoena could be determined to be presumptively valid, shifting the burden to the respondent to show why the subpoena is not enforceable. Quoting again from *Hoover*, the circuit court found that "West Virginia courts are 'particularly sensitive to claims of administrative subpoena 'abuse,' " and when such a claim is raised, the circuit court must perform its "gatekeeper function" and provide "meaningful judicial oversight" and "careful

---

in which the records are located, to inspect them on his behalf.

(3) Upon failure of a person without lawful excuse to obey a subpoena or to give testimony and upon reasonable notice to all persons affected thereby, the attorney general may apply to the circuit court of the county in which the hearing is to be held for an order compelling compliance.

(4) The attorney general shall not make public the name or identity of a person whose acts or conduct he investigates pursuant to this section or the facts disclosed in the investigation, but this subsection does not apply to disclosures in actions or enforcement proceedings pursuant to this chapter.

scrutiny" to determine if the subpoena is entitled to judicial backing. *Hoover* at 18–19, 483 S.E.2d at 18–19.

The circuit court found that the sole issue before it was whether the petitioner had employed proper procedures in issuing the administrative investigative subpoena to the respondents. The order noted, *inter alia,* that if the Attorney General could not demonstrate that the subpoena was procedurally sound, the subpoena would be invalid and could not be enforced by the circuit court. The circuit court ruled that the subpoena could not withstand scrutiny because the procedural requirements for issuing a valid out-of-state subpoena *duces tecum* were not met.

The Attorney General did not file a direct appeal to this Court from the order of August 15, 2011. On December 5, 2011, the petitioner filed a Petition for Writ of Prohibition, seeking the stop the enforcement of the circuit court's order.

## II.

### STANDARD OF REVIEW

■■■ In Syllabus Point 4 of *Hoover*, 199 W.Va. 12, 483 S.E.2d 12, we explained that

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1)

whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Using this standard of review, we examine the Attorney General's request for a writ of prohibition.

## III.

### DISCUSSION

In his petition to this Court the Attorney General raised five distinct questions of law, all going to the merits of whether the circuit court should have enforced the investigative subpoena issued by the Attorney General.[4]

4. The petitioner's original five questions were as follows:
1. Whether a Virginia lender who makes loans to West Virginia residents secured by titles to their motor vehicles that engaged in "debt collection" practices that allegedly violate the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. § 46A–1–1, et seq., (i.e. harassing consumers by telephone, disclosing debts to family members, friends, references, employers; contacting third parties) has engaged in sufficient minimum contacts for due process purposes to submit itself to the investigative and regulatory jurisdiction of the Attorney General of West Virginia?
2. Whether a Virginia lender that files liens with the West Virginia Division of Motor Vehicles against the titles of vehicles owned by the West Virginia residents to secure its loans has engaged in sufficient minimum contacts for due process purposes such as to submit itself to the to the investigative and regulatory jurisdiction of the Attorney General of West Virginia?

3. Whether a Virginia lender that files liens with the West Virginia Division of Motor Vehicles against the titles of vehicles owned by West Virginia residents to secure its loans has engaged in sufficient minimum contacts for due process purposes such as to submit itself to the investigative and regulatory jurisdiction of the Attorney General of West Virginia?
4. Whether the WVCCPA, specifically W. Va. Code § 46A–7–104, authorizes the Attorney General to issue an investigative subpoena requiring production of documents from an out-of-state lender that has made loans to West Virginia residents and engaged in allegedly unlawful debt collection activities when the lender's records are located out of state?
5. Whether a circuit court in West Virginia has jurisdiction to enforce an investigative subpoena issued by the Attorney General pursuant to W. Va.Code § 46A–7–104 for the records of a lender that engaged in allegedly unlawful debt collection activities here when the company or its records are located out of state?

The respondents argue that these questions are improperly before this Court, and that the sole issue for review is whether the circuit court was correct when it ruled that the Attorney General had failed to utilize the proper procedure when it issued and served the administrative investigative subpoenas upon the out-of-state respondents.

We agree with the respondent that the five questions posed by the Attorney General exceed the scope of our review in an original jurisdiction extraordinary remedy proceeding. The underlying order issued by Judge King clearly framed the issue facing him as whether the Attorney General issued a procedurally sound subpoena to the respondents. Relying upon the *Hoover* analysis the circuit court found that the petitioner made procedural missteps in executing and serving the subpoenas upon the out-of-state respondents. An appeal of that decision to this Court would have allowed this Court to rule on the propriety of that ruling. However, the proceeding before us is not an appeal on the merits, but rather a petition for writ of prohibition.

This Court looks with disfavor upon the use of the extraordinary writ process to address problems which should have been handled by an appeal. The writ of prohibition is truly an extraordinary remedy, one which should be reserved for extraordinary cases. We have held that

"Prohibition lies only to restrain inferior courts from proceedings in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers, and may not be used as a substitute for [a petition for appeal] or certiorari."

Syl. pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953).

Whether there was another adequate remedy available to the Attorney General is a factor in determining whether to issue a discretionary writ of prohibition. We held in *Hoover*:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *Hoover v. Berger, ibid.*

In the instant case, there was another adequate remedy clearly available to the Attorney General; i.e., the filing of a direct appeal to this Court. A direct appeal is a more appropriate remedy available to address the perceived error in the lower court's order. The petition for writ of prohibition is not a substitute for an appeal. We therefore deny the requested writ of prohibition.

## IV.

## CONCLUSION

Because the petitioners had another adequate remedy, that being an appeal of the order of the Circuit Court of Kanawha County, we deny the issuance of the writ of prohibition.

Writ denied.

Justice WORKMAN dissents, and reserves the right to file a dissenting opinion.

WORKMAN, Justice, dissenting:

I disagree with the majority's summary dispensation of this case inasmuch as I believe that petitioner presented a new and important issue of first impression which was

properly before this Court, it needs to be resolved on the merits. The Legislature has clearly vested the Attorney General with investigatory powers which are critical to the protection of West Virginia citizens; an analysis of and guidance regarding the proper procedures for utilizing that power was unquestionably warranted. Accordingly, I dissent.

In the instant case, the Attorney General initiated an investigation into the debt collection practices of Fast Auto Loans, Inc., Community Loans of America, Inc., and Robert I. Reich [hereinafter "respondents"] upon receipt of complaints by citizens of West Virginia calling their activities into question. In particular, the Attorney General alleges that he has been provided with information indicating that respondents have been engaged in debt collection practices in the state of West Virginia including unlawful debt collection telephone calls to West Virginia residents, unlawful disclosure of information regarding the West Virginia residents' indebtedness to employers and relatives, and unlawful threats and accusations of fraud against West Virginia citizens. The Attorney General has information indicating that the respondents have also entered the state to repossess property which secures the loans underlying the debt collection.

In accordance with the authority granted to him pursuant to W. Va.Code § 46A–7–104, the Attorney General issued a subpoena duces tecum to respondents. W. Va.Code § 46A–7–104, in pertinent part, provides:

(1) If the attorney general has probable cause to believe that a person has engaged in an act which is subject to action by the attorney general, he may ... make an investigation to determine if the act has been committed and, to the extent necessary for this purpose ... may subpoena witnesses, compel their attendance, adduce evidence, and *require the production of any matter which is relevant to the investigation, including the existence, description, nature, custody, condition and location of any books, records, documents or other tangible things* ...

(2) *If the person's records are located outside this State,* the person at his option shall either make them available to the attorney general at a convenient location within this State or pay the reasonable and necessary expenses for the attorney general or his representative to examine them at the place where they are maintained....

(3) Upon failure of a person without lawful excuse to obey a subpoena or to give testimony and upon reasonable notice to all persons affected thereby, the attorney general may apply to the circuit court of *the county in which the hearing is to be held* for an order compelling compliance.

(Emphasis added).

The Attorney General argues that the statute fully empowers him to issue subpoenas *duces tecum* and that such power is unfettered by any procedural mechanisms; he argues that a simple "minimum contacts" analysis is all that is required to subject an out-of-state resident to the subpoena power of the Attorney General as set forth in the statute. He further contends that he followed the statute by first issuing the subpoena and, when respondents failed to provide the materials sought, then applying to the circuit court to compel compliance.

Significantly, respondents appear to fully concede that their actions bring them within the investigatory powers of the Attorney General. In their brief, respondents state that they "do not dispute that W. Va.Code § 46A–7–104 grants the attorney general investigative powers, but rather contend that—like everyone else—the attorney general has to use proper procedures in issuing his subpoenas." Rather, respondents contend that the Attorney General did not follow the proper procedure to subpoena documents from Georgia, where the documents responsive to the subpoena *duces tecum* were held. Respondents argue that the Attorney General must "domesticate" his administrative subpoena *duces tecum* in Georgia and comply with Georgia procedural requirements.

The circuit court summarily agreed with respondents that the subpoena *duces tecum* must be domesticated in Georgia to be enforceable and therefore, the Attorney General failed to satisfy the fifth prong of the requirements set forth in Syllabus Point 1 of *State ex rel. Hoover v. Berger,* 199 W.Va. 12,

483 S.E.2d 12 (1996) to obtain "judicial backing" for enforcement of administrative subpoenas. Syllabus Point 1 provides, in part:

In order to obtain judicial backing for the enforcement of an administrative subpoena, the agency must prove that (1) the subpoena is issued for a legislatively authorized purpose, (2) the information sought is relevant to the authorized purpose, (3) the information sought is not already within the agency's possession, (4) the information sought is adequately described, and (5) proper procedures have been employed in issuing the subpoena.

*Id.* However, in concluding that the subpoena must be domesticated in Georgia, the circuit court cited no authority (nor do the respondents provide any on appeal) indicating that a pre-litigation, investigatory administrative subpoena *duces tecum* is subject to the same mechanisms for issuance of subpoenas and subpoenas *duces tecum* to non-residents in the course of litigation governed by our Rules of Procedure, especially given our separate, specific statute on the Attorney General's powers in this regard. In fact, the absence of any authority for respondents' and the circuit court's proposition is glaring and highlights the danger of the majority's refusal to analyze this matter on its merits.[1] In fact, respondents refer to the issue before the circuit court as a "quotidian procedural issue." Such a gross oversimplification demonstrates either a complete failure to grasp the issue or a disingenuous attempt to reframe or obfuscate it. Certainly, were the questions presented so commonplace and fundamental, it would seem that respondents and the circuit court would have been better able to provide this Court with clear and authoritative precedent demonstrating the correctness of the circuit court's action. *See supra* n.1.

In contrast, both petitioner and the *amicus curiae* provided this Court with the only persuasive authority squarely on point, all of which supports the petitioner's proposition that the circuit court clearly erred. The seminal case on this issue, *Silverman v. Berkson,* 141 N.J. 412, 661 A.2d 1266 (1995), contains a thorough and scholarly analysis of the precise issue presented herein. In *Silverman,* the New Jersey Supreme Court determined that an out-of-state resident was subject to the subpoena power of its Bureau of Securities. The court found that the appropriate analysis arises from the principles of long-arm jurisdiction and that a "minimum contacts" analysis was the procedural safeguard necessary for issuance of the subpoena. *Id.* at 426, 431, 661 A.2d 1266. The court noted, however, that the power to subpoena an out-of-state resident does not "inevitably follow" from the body of jurisprudence regarding long-arm jurisdiction, but that the "measures of sovereign power are ultimately the same." *Id.* at 425, 661 A.2d 1266. The

---

1. The circuit court's order states that "[g]eneral principles of territorial jurisdiction and state sovereignty dictate that a forum state's subpoena power does not extend beyond its borders." The circuit court then inexplicably cites to *Guthrie v. Am. Broad. Companies, Inc.,* 733 F.2d 634, (4th Cir.1984) which appears wholly inapplicable. Most obviously, the subpoena at issue in *Guthrie* was issued in the course of civil litigation. As a result, the decision therein deals exclusively with interpretation of the Federal Rules of Civil Procedure and the extra-territorial service of subpoenas among Federal districts—all of which are governed by uniform federal law and rules of civil procedure. *Guthrie* does not address a statutory grant of authority to perform investigatory functions and issue extra-territorial subpoenas. Moreover, *Guthrie* simply cannot be fairly read to stand for the broad and simplistic proposition that "a forum state's subpoena power does not extend beyond its borders."

In addition to *Guthrie,* the circuit court (and the respondents on appeal) cite to self-serving Georgia statutes regarding Georgia's process for issuance of subpoenas as well as a 1983 Georgia criminal case regarding whether a criminal defendant's request to secure out-of-state witnesses was pretext for a continuance. The court therein made passing reference to Georgia's "Uniform Act to Secure the Attendance of Witnesses from Without the State"—a statute applicable to criminal prosecutions and grand jury proceedings. Ga. Stat. Ann. § 24–10–90. This "authority" is as unhelpful as *Guthrie.* The issue presented *sub judice* was not what Georgia requires with respect to issuance of subpoenas. Rather, the issue is quite simply whether the West Virginia Attorney General, in the exercise of his statutory investigatory obligations and power, is required to comply with Georgia process and procedure to effectuate proper and enforceable service of a subpoena *duces tecum* on a Georgia resident. The lower court simply *presumed* that the Attorney General was so required and launched into a discussion of the Georgia requirements and the Attorney General's failures in that regard.

court stated: "The concepts of 'jurisdiction to prescribe' ('the authority of a state to make its law applicable to persons or activities') and 'jurisdiction to adjudicate' ('the authority of a state to subject particular persons or things to its judicial process') are closely linked. *Id.* As a result, the court found that an investigatory administrative subpoena issued to those who had purposefully avail themselves of the new Jersey securities market was "consistent with principles of due process." *Id.* at 432, 661 A.2d 1266. Both Indiana and Massachusetts have applied like reasoning to administrative subpoenas issued to non-residents by their Attorney General and Secretary of the Commonwealth, respectively. *See Everdry Marketing and Management, Inc. v. Carter,* 885 N.E.2d 6 (Ct. App.Ind.2008) and *Galvin v. Jaffe,* 2009 WL 884605 (Mass.Super.2009).[2] Respondents herein provided no on-point authority to the contrary.

Turning now to the majority's decision in this case, it correctly states that this Court has held:

> In determining whether to entertain and issue the writ of prohibition ... this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. *These factors are general guidelines that serve as useful starting point for determining*

*whether a discretionary writ of prohibition should issue.*

Syl. Pt. 4, in part, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996)(emphasis added). However, we have further held that "all five factors need not be satisfied[.]" *Id.* The majority addresses only the first factor—availability of another remedy—and goes no further, denying the writ on that basis alone.[3]

As this Court made plain in *Hoover,* availability of another remedy is but one factor to be considered and that the factors themselves are merely a "starting point." The issue presented in petitioner's writ is of significant importance to the citizens of West Virginia. However, the majority's opinion leaves unanswered the question of whether an out-of-state company can purposefully avail itself of the State of West Virginia, but escape the investigatory purview of the Attorney General by simply refusing to cooperate with an administrative subpoena *duces tecum,* despite the fact that the face of W. Va.Code § 46A–7–104 certainly seems to reflect a legislative intent to provide the Attorney General with direct investigatory powers.

As illustrated above, the issue in the case strikes at the very core of the Attorney General's investigative powers. In the current age, consumerism no longer exists exclusively on street corners or with local vendors and businesses. Technological consumerism has blurred—if not completely erased—state boundaries, making the Attorney General, who is charged with protecting the consumers of this State, wholly unable to protect our citizens unless he has the ability to bring out-of-state businesses within his reach. Unquestionably, the means and methods of the Attorney General's obligation to investigate unlawful practices of out-of-state business calls into question

2. Although both *Everdry* and *Galvin* involved additional facts permitting the courts to analyze and conclude that the out-of-state residents had consented to the jurisdiction of the issuing states, the courts nevertheless undertook an alternative analysis of whether issuance of the subpoenas, in absence of consent, would comport with due process. *Everdry* at 11–15; *Galvin* at *9–12. Both courts determined that consent notwithstanding, the non-residents' minimum contacts

with the issuing state required them to comply with the subpoena. *Everdry* at 15; *Galvin* at *11.

3. I recognize that the majority disapproved of the fact that the extraordinary office of prohibition was not utilized by the Attorney General until he had permitted the deadline for filing his notice of intent to appeal to lapse. However, an analysis of all the *Hoover* factors might reflect that prohibition nevertheless could lie.

complex issues of comity and the sovereignty of the states. These are weighty issues to which respondents and the circuit court below gave cursory commentary without any substantive analysis. As such, I believe it is the obligation of this Court, before summarily dismissing this matter on procedural grounds, to give consideration to the significance of this issue which demands substantive resolution.

Therefore, for the reasons stated above, I respectfully dissent.