AUTO–OWNERS INSURANCE
COMPANY, Appellant–
Respondent,

v.

STATE of Indiana, Appellee–Petitioner.

No. 27A05–9612–CV–487.

Court of Appeals of Indiana.

March 20, 1998.

Donald K. McClellan, McClellan, McClellan & Arnold, Muncie, for Appellant–Respondent.

Jeffrey A. Modisett, Attorney General, Mary Ann Wehmueller, Deputy Attorney General, Indianapolis, for Appellee–Petitioner.

## OPINION

RUCKER, Judge.

As part of a civil investigative proceeding the State of Indiana through the offices of the Indiana Attorney General filed a motion with the trial court seeking to compel Auto–Owners Insurance Company (Auto–Owners) to produce business records and answer interrogatories. The trial court granted the motion. Auto–Owners now appeals contending the trial court abused its discretion in so doing. We disagree and therefore affirm.

Indiana Code § 4–6–3–3 instructs the Attorney General to investigate violations of various business and trade laws of this state and authorizes discovery pursuant to such an investigation.[1] In accordance with this authority the Attorney General initiated an investigation into the affairs of Auto–Owners. More specifically the Attorney General sought to determine whether Auto–Owners was in violation of the Deceptive Consumer Sales Act and the Salvage Motor Vehicles Act.

The essential facts giving rise to the Attorney General's investigation are these. Auto–Owners is a Michigan domiciled insurance

---

1. The statute provides:

   If the attorney general has reasonable cause to believe that a person may be in possession, custody, or control of documentary material, or may have knowledge of a fact that is relevant to an investigation conducted to determine if a person is or has been engaged in a violation of IC 4–6–9, IC 4–6–10, IC 13–14–10, IC 13–14–12, IC 13–24–2, IC 13–30–4, IC 13–30–5, IC 13–30–6, IC 13–30–8, IC 23–7–8, IC 24–1–2, IC 24–5–0.5, IC 24–5–7, IC 24–5–8, IC 25–1–7, IC 32–9–1.5, or any other statute enforced by the attorney general, only the attorney general may issue in writing, and cause to be served upon the person or the person's representative or agent, an investigative demand that requires that the person served do any combination of the following:

   (1) Produce the documentary material for inspection and copying or reproduction.

   (2) Answer under oath and in writing written interrogatories.

   (3) Appear and testify under oath before the attorney general or the attorney general's duly authorized representative.

company doing business in Indiana. It writes insurance policies for new and used motor vehicles and acquires thousands of vehicles that have been declared a total loss. In 1995 the consumer protection division of the Attorney General's office received a complaint that Auto–Owners had sold a total loss vehicle to a consumer without first obtaining a certificate of salvage title.[2] The vehicle, a 1991 GMC Safari van, was originally owned by Bruce Getts. Getts was insured by Auto–Owners. After Getts damaged the vehicle he entered a settlement with Auto–Owners which took possession of the vehicle declaring it a total loss. On March 6, 1992 Auto–Owners sold the van to Allan Abramow. Thereafter Abramow sued Getts for issuing a faulty odometer disclosure statement on the van. Apparently, as a part of that litigation Getts ordered a title history on the vehicle and discovered that Auto–Owners had failed to apply for a salvage title; that Auto–Owners did not appear in the title history of the vehicle; and that the title history indicated that Getts had sold the vehicle to Abramow. In February 1995 Getts filed a written complaint with the Attorney General's office.

On April 18, 1995 the State issued a Civil Investigative Demand (hereafter referred to as the Demand or a C.I.D.) addressed to Auto–Owners consisting of a request for the production of documents and a set of eleven interrogatories. The interrogatories dealt with the identification of each total loss motor vehicle Auto–Owners had acquired since January 1, 1992. The request for documents included copies of all documentation pertaining to the loss and acquisition of the vehicles referred to in the interrogatories including loss reports, engineering reports, purchase orders, and odometer disclosure statements. The Demand indicated that it was issued pursuant to Ind.Code § 4–6–3–3 to determine whether Auto–Owners had violated Ind. Code § 24–5–0.5–1 *et seq.* (Deceptive Consumer Sales Act) or Ind.Code § 9–22–3–1 *et*

*seq.* (Salvage Motor Vehicles Act). In response Auto–Owners objected to ten of the eleven interrogatories on the grounds that the information sought was over broad and placed an undue burden and expense on Auto–Owners and that the information sought was not calculated to lead to the discovery of admissible evidence. Auto–Owners did respond to one interrogatory stating that it had sold one vehicle to Allan Abramow since January 1, 1992, and that was on March 6, 1992 when he purchased a 1991 GMC Safari van previously owned by Bruce Getts. With respect to the request for production of documents Auto–Owners gave the same response that it had given to the interrogatories. Auto–Owners did, however, produce all documents pertaining to the sale of the Safari van. Auto–Owners also provided the State with a computer printout of 6,790 total loss vehicles it had acquired since January 1, 1992. However there was no identifying information on the printout such as vehicle identification numbers. Thereafter on April 14, 1996 the State filed a petition with the trial court to enforce the C.I.D., and Auto–Owners countered with a motion for protective order. After conducting a hearing the trial court issued an order denying Auto–Owners' motion and granting the State's petition. This interlocutory appeal followed.

Auto–Owners first contends the trial court abused its discretion by enforcing the C.I.D. because there is no evidence of a violation of law within the applicable statute of limitations. More specifically Auto–Owners points out that the State has a two-year limitation period within which to bring an action under the Deceptive Consumer Sales Act.[3] The deceptive act in this case, according to Auto–Owners, occurred on March 6, 1992, and thus the outside date for bringing an action was March 6, 1994. Therefore, the argument continues, because the State no longer has a remedy for any alleged violation of the Act, the trial court abused its discretion by en-

---

**2.** Where an insurance company has acquired a vehicle which it has declared as a total loss, i.e. a declaration that the vehicle is economically impractical to repair, the insurance company is required to obtain a certificate of salvage title from the Bureau of Motor Vehicles. *Allstate Ins. Co. v. Larkin's Body Shop,* 673 N.E.2d 846 (Ind.

Ct.App.1996), *reh'g denied;* Ind.Code §§ 9–22–3–3(a) and 9–22–3–11(a).

**3.** Ind.Code § 24–5–0.5–5(b) provides in relevant part: "Any action brought under this chapter may not be brought more than two (2) years after the occurrence of the deceptive act."

forcing the C.I.D. In essence Auto–Owners contends that the State should not be able to investigate a matter where it cannot bring sanctions even if a violation is found.

■ We first observe this issue is waived. At the trial court level Auto–Owners objected to the enforcement of the C.I.D. on grounds that the interrogatories as well as the request for production of documents were over broad, placed an undue burden and expense on Auto–Owners, and the information sought was not calculated to lead to discovery of admissible evidence. Auto–Owners did not object to the C.I.D. on statute of limitation grounds. A party who does not raise an issue or argument at the trial court level may not raise that issue or argument for the first time on appeal. *Ansert v. Indiana Farmers Mutual Insurance Co.,* 659 N.E.2d 614 (Ind. Ct.App.1995), *trans. dismissed.* Waiver notwithstanding Auto–Owners still cannot prevail.

■ First, not only is the State investigating potential violations of the Deceptive Consumer Sales Act, but it is also investigating potential violations of the Salvage Motor Vehicles Act. The two year limitation period applicable to violations of the Deceptive Consumer Sales Act is not necessarily applicable to violations of the Salvage Motor Vehicles Act.[4] Second, and perhaps more importantly, Auto Owners' argument is based on a faulty premise, namely: that the only purpose or the primary purpose of conducting an investigation is to file legal action. That is not necessarily the case. Should the State determine that a party "has engaged in, is engaging in, or is about to engage in [a] deceptive act" the Attorney General may "accept an assurance of voluntary compliance" from the offending party with respect to any deceptive practice. Ind.Code § 24–5–0.5–7. No "legal action" is necessary except that the voluntary compliance must be filed with and subject to the approval of the trial court. *Id.* Third, nothing in the wording of Ind.Code § 4–6–3–3 limits the State's authority to issue a C.I.D. based upon the statute of limitations for the act triggering an investigation. Among other things I.C. 4–6–3–3 provides that the Attorney General may conduct an investigation to determine if a person "is or has been" engaged in a violation of any statute enforced by the Attorney General. Here, the Attorney General was seeking at least to determine if Auto–Owners has been violating the Deceptive Consumer Sales Act and the Salvage Motor Vehicles Act. That the act triggering the investigation may fall outside the limitation period does not prohibit the State from conducting an investigation in the first instance.

■ In a related argument, Auto–Owners contends that I.C. 4–6–3–3 also provides that the Attorney General must first have "reasonable cause" to believe that there has been a statutory violation. The argument continues that because the State received only a single complaint concerning a statutory violation and has no evidence of any violation occurring within the limitation period, the trial court erred in enforcing the C.I.D. We reject the limitations argument for reasons previously discussed. As for the "reasonable cause" contention we disagree with Auto–Owners' reading of I.C. 4–6–3–3. In pertinent part the statute dictates:

> "If the attorney general has reasonable cause to believe that a person may be in possession, custody, or control of documentary material, or may have knowledge of a fact that is relevant to an investigation conducted to determine if a person is or has been engaged in a violation of [various statutory provisions] or any other statute enforced by the attorney general ... the attorney general may issue in writing ... an investigative demand...."

*Id.* The plain wording of the statute shows that the "reasonable cause" requirement is not addressed to the commission of a violation of law. Rather it is addressed to whether a person may have certain information relevant to an investigation. In this case,

---

4. It is true that a violation of the Salvage Motor Vehicles Act constitutes a deceptive act that is subject to a two year limitation period. *See* Ind.Code § 9–22–3–37. However, it is also true that certain violations of the Salvage Motor Vehi-

cles Act concerning the issuance of certificates of salvage titles are Class D felony criminal offenses. *See* Ind.Code § 9–22–3–33. The limitation period for such offenses is five years. *See* Ind.Code § 35–41–4–2.

after Getts filed his consumer complaint the State contacted Auto–Owners and confirmed that it had not applied for a certificate of salvage title as required by the Salvage Motor Vehicles Act. Once the State decided to conduct an investigation to determine whether Auto–Owners may have violated the Act, it was certainly reasonable and logical to believe that Auto–Owners possessed information relevant to the investigation.

One of the tenets of statutory construction provides that statutes are to be construed so as not to produce an absurdity. *Family and Social Services Admin. v. Calvert,* 672 N.E.2d 488, 491–92 (Ind.Ct.App.1996), *trans. denied.* Interpreting I.C. § 4–6–3–3 as requiring reasonable cause to believe that a statutory violation occurred before an investigation is even initiated would produce an absurdity. The very purpose of an investigation under the statute is to determine if in fact a violation has occurred. If the State had reasonable cause to believe that a violation already existed, there would be no need for investigation in the first place.

Next, Auto–Owners contends the trial court abused its discretion by enforcing the C.I.D. because the State's request for production of documents is unreasonable. Auto–Owners directs our attention to Ind. Code § 4–6–3–5 which provides in relevant part "an investigative demand may not: (1) contain a requirement that would be unreasonable if contained in a subpoena or subpoena duces tecum issued by a Court in a grand jury investigation...." The standard of reasonableness for purposes of a grand jury subpoena duces tecum requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. *State ex rel. Pollard v. Criminal Court of Marion County,* 263 Ind. 236, 329 N.E.2d 573, 586 (1975). In this case the State sought documents extending over a three-year period. Auto–Owners' unreasonableness claim is based solely on its statute of limitations argument. "How can the State of Indiana have a right to obtain documents extending over a three and one-half [year] period, when it only has a two-year statute of limitations under which to bring an action for

a violation under I.C. 24–5–0.5–5(b)?" Brief of Appellant at 19–20. We have already addressed this issue and decline to explore it further.

Judgment affirmed.

SHARPNACK, C.J., and DARDEN, J., concur.