LIBERTY PUBLISHING, INC., d/b/a
Booster Club Productions,
Appellant–Respondent,

v.

Steve CARTER, Indiana Attorney
General, Appellee–Petitioner.

Nu–Sash of Indianapolis, Inc., d/b/a
McKee Sunroom Designs,
Appellant–Respondent,

v.

Steve Carter, Indiana Attorney General,
Appellee–Petitioner.

No. 49A02–0606–CV–502.

Court of Appeals of Indiana.

June 25, 2007.

Kurt A. Webber, Carmel, IN, Attorneys for Appellant Liberty Publishing, Inc.

Preston T. Breunig, Martha L. West-brook, Buck Berry Landau & Breunig, Indianapolis, IN, Attorneys for Appellant Nu–Sash of Indianapolis, Inc.

Steve Carter, Attorney General of Indiana, Thomas M. Fisher, Solicitor General, Julie A. Hoffman, Terry Tolliver, Heather L. Hagan, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

This is a consolidated appeal of the challenges of Liberty Publishing, Inc. ("Liberty") and Nu–Sash of Indianapolis, Inc. ("Nu–Sash") to the trial courts' orders to enforce the Civil Investigation Demand (the "CID")[1] issued by the Attorney General of Indiana (the "AG") to investigate the companies under the Indiana Deceptive Consumer's Sales Act (the "IDCSA") and the Indiana Home Improvement Contract Act (the "IHICA"), respectively. The appeal raises the following issues:

I. Whether a showing of reasonable cause under the statute requires the AG to introduce evidence demonstrating the CID was proper.

II. Whether Liberty's alleged acts constituted "consumer transactions," such that the AG may investigate for deceptive trade practices.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts and procedural history are addressed individually.

### A. Liberty

In late 2005, the AG received several complaints that Liberty was engaged in deceptive consumer practices. Specifically, the complaints alleged that Liberty held itself out to be Booster Club Productions, selling advertising space on calendars containing local high schools' athletic schedules. The complaints claimed that Liberty represented that a portion of its proceeds would benefit local schools or that it would otherwise hold fundraising events to benefit local schools.

In response, the AG issued a CID to Liberty stating it had "reasonable cause" to believe that Liberty possessed information relevant to the AG's investigation into whether Liberty had violated the IDCSA. The CID demanded that Liberty produce relevant discovery. Liberty refused to respond, and thus, the AG filed a petition to enforce the CID, which the trial court granted. Liberty moved to dismiss the CID, which was denied. Liberty now appeals.

### B. Nu–Sash

After receiving several complaints that Nu–Sash had failed to supply its customers with applicable statutory terms, the AG issued a CID stating it had "reasonable cause" to believe that Nu–Sash had information to assist the AG's investigation

---

1. Under IC 4–6–3–3, the AG is empowered to investigate violations of various business and trade laws of this state and authorizes discovery through a CID pursuant to such an investigation. *Auto–Owners Ins. Co. v. State*, 692 N.E.2d 935, 936 (Ind.Ct.App.1998).

of whether Nu–Sash had violated the IHI-CA, namely, IC 24–5–11–10.

Nu–Sash's refusal to respond caused the AG to file a petition to enforce the CID, which the trial court granted. Nu–Sash now appeals.

## DISCUSSION AND DECISION

This court's standard of review of a petition to enforce a CID is whether the trial court abused its discretion. *Auto–Owners Ins. Co. v. State,* 692 N.E.2d 935, 939 (Ind.Ct.App.1998). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the circumstances before it. *Marks v. Tolliver,* 839 N.E.2d 703, 707 (Ind.Ct.App.2005). When we review for an abuse of discretion, we do not reweigh the evidence or judge the credibility of the witnesses. *Id.*

### I. Reasonable Cause and Proper Demand for CID

■ Liberty claims the AG failed to show reasonable cause necessary to issue a CID pursuant to IC 4–6–3–3, and Nu–Sash claims that the AG did not show the demand was proper, pursuant to IC 4–6–3–6. They contend that the AG must enter evidence of a complaint that Liberty and Nu–Sash had in fact violated respectively the IDCSA or the IHICA to have reasonable cause to issue the demand and the propriety to enforce it.

In *Auto–Owners Ins. Co.,* 692 N.E.2d at 938 this court addressed what reasonable cause the AG is required to show to issue a CID. Specifically, the court referenced IC 4–6–3–3, which states:

> If the [AG] has reasonable cause to believe that a person may be in possession, custody, or control of documentary material, or may have knowledge of a fact that is relevant to an investigation conducted to determine if a person is or has been engaged in a violation of [various

statutory provisions], or any other statute enforced by the [AG], only the [AG] may issue in writing, and cause to be served upon the person or the person's representative or agent, an investigative demand that requires that the person served do any combination of the following:

> (1) Produce the documentary material for inspection and copying or reproduction.

> (2) Answer under oath and in writing interrogatories.

> (3) Appear and testify under oath before the [AG] or the [AG]'s duly authorized representative.

We stated that the plain wording of the statute does not address the commission of a violation of law, but instead, addresses whether a person may have information pertaining to an investigation. *Auto–Owners Ins. Co.,* 692 N.E.2d at 938. "The very purpose of an investigation is to determine if in fact a violation has occurred." *Id.* at 939.

Liberty claims that the AG must enter into evidence a complaint before he may enjoy his broad powers of investigation. Liberty argues that the AG's showing is on par with what is required under the Fourth Amendment to the United States Constitution. Nu–Sash's argument varies slightly and claims that since it has objected to the CID, the AG is required under IC 4–6–3–6 to show that the demand was proper. We disagree with Liberty's contention that the AG must show as much as is necessary under the "reasonable suspicion" standard in criminal law; and find as we did in *Auto–Owners Ins. Co.,* that a CID is a pre-litigation tool used by the AG to determine whether a violation of law occurred. 692 N.E.2d at 938. Further, we disagree with Nu–Sash's contention that the AG failed to show the CID was proper.

Here, there were complaints that Liberty violated the IDCSA and complaints that Nu–Sash failed to comply with the IHICA. In response, the AG issued a CID to each party to investigate whether either party had evidence to support the alleged complaints. Indiana case law clearly states that a CID is an appropriate pre-litigation tool that may be used by the AG to determine whether a party has evidence of a particular violation of statutory law. *Id.* Under IC 4–6–3–4:

[a]n investigative demand shall contain the following:

(1) A general description of the subject matter being investigated and a statement of the applicable provisions of law.

(2) The date, time, and place at which the person is to appear, answer written interrogatories, or produce documentary material or other tangible items. The date shall not be less than ten (10) days from the date of service of the demand.

(3) Where the production of documents or other tangible items is required, a description of those documents or items by class with sufficient clarity so that they might be reasonably identified.

Neither party claims that the AG failed to meet these requirements. These requirements plus the attached complaints constituted reasonable grounds for the AG to issue its CID to Liberty and to show that the demand was proper for Nu–Sash. The trial court did not abuse its discretion.

## II. "Consumer Transactions"

■ Liberty raises the issue of whether its alleged actions were consumer transactions that provided the AG jurisdiction to represent the interests of businesses and school corporations under the IDCSA. Specifically, Liberty claims that it only solicited businesses, and therefore, the AG did not have a "consumer" transaction to investigate.

IC 24–5–0.5–2 provides:

(1) "Consumer transaction" means a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible, except securities and policies or contracts of insurance issued by corporations authorized to transact an insurance business under the laws of the state of Indiana, with or without an extension of credit, to a person for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things. . . .

(2) "Person" means an individual, corporation, the state of Indiana or its subdivisions or agencies, business trust, estate, trust, partnership, association, nonprofit corporation, or cooperative or any other legal entity.

In 1991, IC 24–5–0.5–2(1) contained the word "individual" instead of "person." Under that version, this court construed the statute to mean that a corporation is not an "individual" under the IDCSA because IC 24–5–0.5–2(2) defined "person," which listed "individual" and "corporation" as separate and distinct parts that made up "person." *Classic Car Centre, Inc. v. Haire Machine Corp.,* 580 N.E.2d 722, 723 (Ind.Ct.App.1991). Since then, the legislature has revised the statute replacing "individual" with "person" as defined in subsection (2) above. *See* IC 24–5–0.5–2(1) (1997). Now, the amended statute states that an entity doing business with either an "individual, corporation, the state of Indiana or its subdivisions or agencies, business trust, estate, trust, partnership, association, nonprofit corporation, or cooperative or any other legal entity" constitutes a consumer transaction.

Here, various businesses and school corporations complained that Liberty represented that its proceeds from the sale of advertising space would benefit local schools and their athletic programs. Under the current reading of the statute, a "person"—school corporations and individual businesses—complained that Liberty violated the IDCSA. These complaints empowered the AG to investigate whether Liberty had relevant evidence. Further, we hold that Liberty subjected itself to the AG's authority to represent and protect the people of Indiana, i.e., beneficiaries of the charitable cause, because the investigation pertained to whether Liberty was falsely representing that its business would use its proceeds for charitable purposes located within Indiana. *See* IC 24–5–0.5–2(1) ("for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things....")·. Accordingly, we affirm the decisions of the trial courts to enforce the CIDs against Liberty and Nu–Sash, and thereby order Liberty and Nu–Sash to immediately produce relevant discovery pursuant to the CID.

Affirmed.

DARDEN, J., and MATHIAS, J., concur.