**EVERDRY MARKETING AND MANAGEMENT, INC.,**
Appellant,

v.

**Steve CARTER, Attorney General of Indiana, Appellee.**

No. 49A02–0706–CV–452.

Court of Appeals of Indiana.

April 14, 2008.

**8**

Christopher L. Cassidy, Javitch, Block, & Rathbone LLP, Cleveland, OH, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin G. Hazlett, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Everdry Marketing and Management, Inc. ("Everdry"), appeals a trial court order granting the Indiana Attorney General's petition to enforce a civil investigative demand ("CID"). We affirm.

### Issue

The dispositive issue is whether the trial court erred in asserting personal jurisdiction over Everdry for purposes of enforcing a CID.

### Facts and Procedural History[1]

Everdry is an Ohio corporation engaged in the offer and sale of franchises that provide waterproofing services for residential properties. Beginning in 2004, Everdry had franchisees doing business in Indiana, including Ross Management, Inc. ("Ross"), and Miken Industries, Inc. ("Miken"), operating in the Indianapolis and Fort Wayne areas respectively.[2] Both were generally known as Everdry Waterproofing ("EW"). Everdry admits that it was operating within the state in violation of statute because it had not filed a Uniform Franchise Registration Application ("Indiana Registration") with the Indiana Secretary of State as required by law for those businesses seeking to offer and sell franchises in Indiana.

In 2005, the Indiana Attorney General received complaints from Indiana consumers against EW alleging failure to honor the "lifetime warranties" offered for forty dollars per year to those who purchased

---

1. We heard oral argument on March 11, 2008, and we thank the parties for their presentations.

2. The record indicates a third franchisee, Kamin Industries, operating in the South Bend area.

Everdry's waterproofing systems. The consumers reported that they were experiencing wet and deteriorating basements and were not receiving the services promised in the warranties.

The Attorney General conducted an investigation and discovered that Everdry's website contained substantially the same warranty statement that appeared in the consumers' contracts. On March 10, 2006, pursuant to Indiana Code Section 4–6–3–3, the Attorney General issued a CID upon Everdry at its Macedonia, Ohio office. The CID alleges

> reasonable cause to believe that Everdry Marketing and Management, Inc. may be in possession, custody, or control of documentary material, or may have knowledge of a fact that is relevant to an investigation being conducted by the [Indiana Attorney General's] Consumer Protection Division. This investigation seeks to determine whether Everdry Marketing and Management, Inc. has violated: Indiana's Deceptive Consumer Sales Act, Indiana Code § 24–5–0.5–1 *et seq.*, by misrepresenting the characteristics or benefits of warranties offered to consumers purchasing Everdry waterproofing systems.

Appellant's App. at 11. The CID concludes with a demand that Everdry provide answers to attached interrogatories and requests for production. *Id.*

On March 24, 2006, counsel for Everdry contacted the Attorney General to arrange a meeting to discuss issues related to the CID. The meeting took place on May 3, 2006, at the Indianapolis office of the Attorney General and involved discussion of customer service issues in the Everdry franchise territories of Indianapolis and Fort Wayne. As a follow-up, Everdry contacted the affected consumers to arrange service and secure documentation regarding their level of satisfaction. At some point, Everdry revoked the franchise rights of Ross and Miken.

On June 2, 2006, the Attorney General filed a petition in Marion Superior Court to enforce the CID. On June 7, 2006, pursuant to Indiana Code Chapter 23–2–2.5, Everdry filed an Indiana Registration. On June 28, 2006, pursuant to Indiana Trial Rule 12(B)(2), Everdry filed a motion to dismiss the Attorney General's petition to enforce, claiming that the trial court lacked personal jurisdiction over Everdry. On July 14, 2006, the trial court deferred action on the Attorney General's petition to enforce and heard evidence on Everdry's motion to dismiss. The court denied Everdry's motion on July 27, 2006.

On August 2, 2006, Everdry filed a motion for certification of interlocutory order for appeal. The trial court granted the motion on September 18, 2006, and this Court denied Everdry's motion for interlocutory appeal on November 14, 2006.

On December 5, 2006, the Attorney General filed a motion for a hearing on its petition to enforce the CID. The trial court heard evidence on April 17, 2007, and entered an order summarily granting the petition on May 3, 2007. This appeal ensued. Additional facts will be provided as necessary.

## Discussion and Decision

Everdry contends that the trial court lacked personal jurisdiction over it and therefore erred in granting the Attorney General's petition to enforce the CID. At the outset, we note that this appears to be an issue of first impression in Indiana. We first address the general nature of a CID, then examine traditional jurisdictional concepts, and finally apply them in the context of CID enforcement.

A CID is a pre-litigation tool used by the Attorney General to determine whether a violation of Indiana law has

occurred. *Liberty Publ'g, Inc. v. Carter,* 868 N.E.2d 1142, 1144 (Ind.Ct.App.2007) (citing *Auto–Owners Ins. Co. v. State,* 692 N.E.2d 935, 939 (Ind.Ct.App.1998)), *trans. granted* (2008).[3] Indiana Code Section 4–6–3–3 provides,

> If the attorney general has reasonable cause to believe that a person may be in possession, custody, or control of documentary material, or may have knowledge of a fact that is relevant to an investigation conducted to determine if a person is or has been engaged in a violation of [various statutory provisions], or any other statute enforced by the attorney general or is or has been engaged in a criminal violation of IC 13, only the attorney general may issue in writing, and cause to be served upon the person or the person's representative or agent, an investigative demand that requires that the person served do any combination of the following:
>
> (1) Produce the documentary material for inspection and copying or reproduction.
>
> (2) Answer under oath and in writing written interrogatories.
>
> (3) Appear and testify under oath before the attorney general or the attorney general's duly authorized representative.

The main function of the CID is not to allege that the subject of the CID has committed a violation of law, but rather to address "whether [the subject] may have certain information relevant to an investigation." *Auto–Owners,* 692 N.E.2d at 938. The Attorney General is not limited to issuing CIDs only to the person being investigated; rather, the Attorney General may also seek information from a non-violator concerning possible violations of state law by others as long as a reasonable basis exists to believe the non-violator possesses information relevant to the investigation. 21 C.J.S. *Credit Reporting Agencies* § 98 (2006) (citing *CUNA Mut. Ins. Soc. v. Att'y. Gen'l,* 380 Mass. 539, 404 N.E.2d 1219 (1980)); *see also* Ind.Code § 4–6–3–3.

 In the traditional sense, personal jurisdiction is a court's power to bring a person into its adjudicative process and enforce a judgment against him. *Am. Econ. Ins. Co. v. Felts,* 759 N.E.2d 649, 653 (Ind.Ct.App.2001). Because Indiana state trial courts are courts of general jurisdiction, jurisdiction is presumed. *Mid–States Aircraft Engines, Inc. v. Mize Co.,* 467 N.E.2d 1242, 1247 (Ind.Ct.App. 1984). The party contesting jurisdiction bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless the lack of jurisdiction is apparent on the face of the complaint. *Fid. Finan. Servs., Inc. v. West,* 640 N.E.2d 394, 396 (Ind.Ct.App.1994). We review a trial court's decision regarding personal jurisdiction de novo. *LinkAmerica Corp. v. Albert,* 857 N.E.2d 961, 965 (Ind.2006). We do not defer to the trial court's legal conclusion as to whether personal jurisdiction exists. *Id.*

 "We have repeatedly held that parties may consent by contract to the exercise of personal jurisdiction by courts that otherwise might not have such jurisdiction." *Linky v. Midwest Midrange Systems, Inc.,* 799 N.E.2d 55, 57 (Ind.Ct.App. 2003) (quoting *Mechanics Laundry v. Wilder Oil Co.,* 596 N.E.2d 248, 251 (Ind.Ct. App.1992), *trans. denied* ). The Attorney

---

**3.** Our supreme court recently granted transfer in *Liberty Publishing.* While jurisdiction was not challenged in that case, our supreme court's eventual resolution of the question of what constitutes reasonable cause to issue a CID may prove helpful in clarifying its overall nature and purpose.

General contends that Everdry consented to the jurisdiction of Indiana courts. The essence of the Attorney General's argument focuses on Everdry's act of filing an Indiana Registration. The Indiana Registration contained specific language indicating Everdry's contractual consent to jurisdiction:

> [T]he undersigned does hereby consent that any such action or proceeding against it may be commenced in any court of competent jurisdiction and proper venue within said State by service of process upon said officer with the same effect as if the undersigned was organized or created under the laws of said State and had lawfully been served with process in said State.

Appellee's App. at 7.[4]

■ Everdry contends that the consent clause contained in the Indiana Registration applies only to internal matters between franchisor and franchisee. However, we agree with the Attorney General that, because its investigation involves matters connected to Everdry's franchising activities within Indiana, Everdry consented to jurisdiction for purposes of the CID. We analogize this consent to a party's act of submitting to a court's jurisdiction by entering a general appearance. Indiana Trial Rule 4(A) provides in pertinent part, "[t]he court acquires jurisdiction over a party or person who under these rules commences or joins in the action, is served with summons or enters an appearance." Just as the general appearance, entered after the lawsuit is filed, constitutes consent to jurisdiction, a registration filed after the initial issuance of the CID and prior to an enforcement order constitutes consent to the court's jurisdiction. *See State ex rel. Gregory v. Superior Court*

*of Marion County, Room No. 1*, 242 Ind. 42, 176 N.E.2d 126 (1961) (party who submits himself to court's authority by entering a general appearance and filing pleadings cannot later challenge jurisdiction).

■ Everdry claims that its Indiana Registration cannot be used against it for jurisdictional purposes because it was filed after the CID was issued. However, we conclude that Everdry is estopped from using its violation of Indiana's registration laws to avoid jurisdiction by consent. Everdry concedes that it violated Indiana law by engaging in franchise operations in Indiana prior to filing an Indiana Registration. *See* Ind.Code Ch. 23-2-2.5. If Everdry had had a proper registration on file at the time the consumer complaints were received, many of the jurisdictional questions would have been answered by the contents of that registration. Justice would not be served by allowing out-of-state actors who adversely affect our citizens to reap benefits within our state while at the same time violating our laws and then attempting to use those violations as a jurisdictional escape hatch.

Consent notwithstanding, Indiana Trial Rule 4.4(A) enumerates eight specific acts that may serve as a basis for an Indiana trial court's assertion of personal jurisdiction over a nonresident and further provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." In *LinkAmerica*, our supreme court held that the catchall language, in essence, "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *Id.* at

---

4. Other sections of the Indiana Registration reference Everdry's intent to do business in Indiana. *See* Appellee's App. at 2, 5.

967.[5] We therefore direct our analysis toward the constitutional safeguards found in the Fourteenth Amendment.

In *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the U.S. Supreme Court established that a nonresident defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. 154 (citation and quotation marks omitted). This test has been clarified to mean that, for jurisdiction to exist, the nonresident defendant must engage in "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In a typical situation, the two types of contacts sufficient to establish jurisdiction are substantial, continuous, and systematic contacts that are unrelated to the subject matter of the lawsuit, i.e., general personal jurisdiction, and minimum, perhaps even isolated, contacts that are substantially connected to the subject matter of the lawsuit, i.e., specific personal jurisdiction. *LinkAmerica*, 857 N.E.2d at 967; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). "The plaintiff need not prove the existence of both types of jurisdiction; either one, standing alone, is sufficient." *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir.

2005). "[I]f the defendant has contacts with the forum state sufficient for general or specific jurisdiction, due process requires that the assertion of personal jurisdiction over the defendant is reasonable." *LinkAmerica*, 857 N.E.2d at 967.

In addition to its Indiana Registration,[6] Everdry maintained significant contacts with Indiana. Everdry relies on language from *Oddi v. Mariner–Denver, Inc.*, 461 F.Supp. 306, 310 (S.D.Ind.1978), to the effect that the "mere presence of franchisees within a state does not subject a franchisor to the jurisdiction of that state's courts." However, this case is distinguishable from *Oddi* in that Everdry's contacts extend beyond the mere presence of its franchisees in Indiana. *See Bland v. Ky. Fried Chicken Corp.*, 338 F.Supp. 871 (S.D.Tex. 1971) (denying nonresident parent corporation's motion to dismiss for lack of jurisdiction where parent, a Kentucky corporation, was held to be doing business in Texas by exerting control over a contract to be performed by its subsidiary in Texas). Everdry engaged in significant interaction with its Indiana franchisees and their customers, including termination of Indiana franchises, active recruitment of a potential Indianapolis franchisee, personal contact with Indiana consumers having service issues, and collection of fees and royalties from its Indiana franchisees. We also note that Everdry's franchisees used its waterproofing products and that the warranties alleged to have been violated by Everdry's franchisees were the same warranties found on Everdry's website.

---

5. The *LinkAmerica* court held that the catchall language, added to Trial Rule 4.4(A) in 2003, rendered inapplicable the two-pronged approach espoused in *Anthem Insurance Co. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1232 (Ind.2000), *superceded by statute*, stating that "[r]etention of the enumerated acts found in Rule 4.4(A) serves as a handy checklist of activities that usually support personal jurisdiction but does not serve as a limitation on the exercise of personal jurisdiction by a

court of this state." *LinkAmerica*, 857 N.E.2d at 967.

6. "Registering to do business is a necessary precursor to engaging in business activities in the forum state." *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990). Ordinarily, registration, standing alone, will not satisfy due process. *Id.*

In a litigation context, "[f]or purposes of specific jurisdiction, contacts should be judged when the cause of action arose." *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59, 66 (1st Cir.2002). However, "unrelated contacts which occurred after the cause of action arose but before the suit was filed may be considered for purposes of the general jurisdiction inquiry." *Harlow*, 432 F.3d at 64. Nonresident defendants "can tip the balance of factors toward personal jurisdiction by expanding their contact with the forum after the alleged bad act." *Anthem Ins. Co. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1238 n. 13 (Ind.2000), *superceded by statute on other grounds*. Pinpointing the dates "when the cause of action arose," "after the alleged bad act," and "before the suit was filed" may be relatively straightforward in cases involving a breach of contract or the commission of a tort; however, such concepts are less easily applied in situations such as this, in which no lawsuit has been filed. Instead, the Attorney General merely seeks to gather information that may prove helpful in making a determination about the viability of potential legal action. Thus, we must determine the operative date of inquiry as it applies to jurisdictional matters in the context of a CID.

We conclude that the operative date of inquiry regarding jurisdictional contacts should be the date the trial court issues its order to enforce the CID. The trial court's enforcement order is the state's formal attempt to compel action and subject the respondent to its sovereign power. Prior to the court's enforcement order, the CID is merely a request from the Attorney General and is not subject to penalties for noncompliance.[7] At the point the court orders the enforcement of the CID, the state has formally exercised its investigatory police power, and noncompliance carries with it potential liability in the form of a contempt citation. As such, we believe this to be the more appropriate date for a trial court to determine whether it has personal jurisdiction over the recipient of a CID.

Here, the Attorney General filed his petition to enforce the CID on June 2, 2006. Five days later, Everdry filed its Indiana Registration. On June 28, Everdry filed a motion to dismiss for lack of personal jurisdiction, which the trial court denied on July 27. The trial court granted the Attorney General's petition to enforce on May 3, 2007. As of that date, Everdry had an Indiana Registration on file in which it consented to jurisdiction. It maintained significant additional contacts with Indiana, many of which occurred before the date of the trial court's enforcement order. In sum, we conclude that Everdry had sufficient minimum contacts with Indiana.[8]

We next address the requirement that the assertion of jurisdiction be reasonable.

---

7. The issuance of the CID is analogous to a situation in which a prosecutor requests that a person meet him at his office in connection with a criminal investigation. It is not until a warrant has been issued for that person's arrest that the state has exercised its police power over that person.

8. As an additional matter, Everdry contends that certain language of Indiana Code Section 4–6–3–6 in effect at the time the CID was issued acts as a barrier to personal jurisdiction:

> If a person objects or otherwise fails to obey a written demand issued under section 3 of this chapter, *the attorney general may file in the circuit or superior court of the county in which that person resides or maintains a principal place of business within the state* an application for an order to enforce the demand.

Reasonableness is determined by balancing five factors: "(1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenien[t] and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies."

*Id.* at 967–68 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■■■ First, we note that Indiana Code Chapter 4–6–3 provides procedural and substantive safeguards adequate to protect the constitutional rights of Everdry and other respondents subject to investigation pursuant to a CID. Next, in addressing the relative burdens and efficiencies required to establish reasonableness, we acknowledge the burden on Everdry in responding to the interrogatories and producing the requested documents. Moreover, Indiana's interest in obtaining a pre-litigation assessment of Everdry's connection to its Indiana franchisees and the warranties alleged to have been violated is high given the potentially hazardous impact of the breach of these warranties upon its residents. Regarding efficient relief, information obtained through the CID will likely serve either to expedite the eventual litigation or render it unnecessary, depending on what the documents and interrogatories uncover. Finally, the attorneys general of the several states[9] certainly would have a shared interest in furthering the policy of protecting their citizens from malfeasance at the hands of nonresident businesses who have no office within the State in question. As the *Bland* court opined,

> The burgeoning of franchise operations, the intricate relationship of franchisors, franchisees, subsidiaries, and suppliers, and the impact they have on the local economy might compel a State to assert more control over these multifarious operations. It would not fly in the face of due process for a State to do so.

*Bland*, 338 F.Supp. at 875.

Everdry's final contention relates to the scope of the CID. Specifically, Everdry

---

(Emphasis added.) The Indiana General Assembly recently amended the statute to include the following language: "If the person does not reside or maintain a principal place of business in Indiana, the application for the order to enforce the [CID] may be filed in the Marion County circuit or superior court." Ind. Code § 4–6–3–6 (eff. July 1, 2007). As the statute makes no reference to retroactivity, Everdry argues the new language does not apply in this case. Everdry neither resides nor maintains a principal place of business in Indiana, and therefore, it asserts that the Attorney General lacks an enforcement remedy against it. We disagree.

The Indiana General Assembly's recent designation of Marion County as the appropriate county in which to file a petition to enforce a CID against a nonresident respondent clarifies Indiana's intent to oversee such out-of-state entities. The statutory language in effect at the time the CID was issued imposed a venue rather than a jurisdictional requirement. *See* Ind. Trial Rule 75(D) (providing in part that "[n]o statute or rule fixing the place of trial shall be deemed a requirement of jurisdiction"); *see also* Ind. Trial Rule 75(A)(10) (listing as a place of preferred venue the county of plaintiff's residence where defendant is nonresident without a principal office in the state). To find a jurisdictional barrier here would create an absurd result wherein an out-of-state entity with sufficient contacts but no principal office in Indiana would be beyond the reach of the Attorney General's investigative powers while within the reach of Indiana courts for purposes of the substantive action for which it is under investigation.

9. Other states provide their attorneys general with investigative powers substantially similar to those afforded our Attorney General. *See, e.g.*, Ohio Rev. Code § 1345.06.

asserts that the CID seeks privileged information and is therefore impermissibly broad. "The permissible breadth of a[CID] is considerable, and a subpoena issued to obtain information related to a statutorily permissible inquiry is not so broad as to constitute an unconstitutional search." 21 C.J.S. *Credit Reporting Agencies* § 98 (2006) (citing *Scott v. Ass'n for Childbirth at Home, Int'l.,* 88 Ill.2d 279, 58 Ill.Dec. 761, 430 N.E.2d 1012 (1981)). Generally, an assertion by the recipient of a CID that it should not be compelled to disclose certain information on the basis that it is privileged information is considered premature when raised in a proceeding to set aside the CID. 21 C.J.S. *Credit Reporting Agencies* § 99 (2006) (citing *Lewandowski v. Danforth,* 547 S.W.2d 470 (Mo.1977)). Indiana Code Section 4–6–3–5(2) provides, "An investigative demand may not ... require the giving of oral testimony, the production of written answers to interrogatories, or the production of documentary material that would be privileged from disclosure if demanded by a subpoena duces tecum issued by a court in aid of a grand jury investigation." Further, Indiana Code Section 4–6–3–6 indicates that the court may make such modification as it deems necessary to protect the respondent's right to confidentiality. Thus, the trial court's authority to modify the CID provides an additional safeguard against fishing expeditions. As the issue before us is one of jurisdiction, we leave it to the trial court to address the issue of scope pursuant to its powers as outlined in the statute. The trial court committed no error in asserting personal jurisdiction over Everdry.

Affirmed.

DARDEN, J., and MAY, J., concur.