2012 COA 206

**STATE of Colorado ex rel. John W. SUTHERS, Attorney General for the State of Colorado; and Laura E. Udis, Administrator, Uniform Consumer Credit Code, Petitioners–Appellants,**

v.

**TULIPS INVESTMENTS, LLC, d/b/a CashBanc; and J. David Blevins, Respondents–Appellees.**

**No. 11CA2367.**

Colorado Court of Appeals, Div. III.

Nov. 21, 2012.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2011.

John W. Suthers, Attorney General, Paul Chessin, Senior Assistant Attorney General, Denver, Colorado, for Petitioners–Appellants.

Jones & Keller, P.C., Edward T. Lyons, Jr., Denver, Colorado, for Respondents–Appellees.

Opinion by Judge DAILEY.

¶ 1 Petitioners, the State of Colorado ex rel. John Suthers, Attorney General for the State of Colorado, and Laura E. Udis, Administrator of the Uniform Consumer Credit Code (collectively, the State), appeal the district court's order dismissing, on subject matter jurisdiction grounds, proceedings brought against respondents, Tulips Investments, LLC, a Delaware corporation, and its president, J. David Blevins (collectively, Tulips), to enforce an administrative subpoena served in Delaware. We reverse and remand for further proceedings.

## I.  Background

¶ 2 An elderly Colorado couple obtained a high interest rate (365% per annum) pay-day loan over the Internet from Tulips. The couple later complained to the Administrator of the Uniform Consumer Credit Code that

Tulips automatically debited money from their checking account every two weeks, causing their account to be overdrawn.

¶ 3 Based on this complaint, the Administrator initiated an investigation into Tulips' activity. Suspecting that Tulips was making unlawful supervised loans in Colorado to Colorado customers, the Administrator sent Tulips a cease-and-desist advisory and, on two occasions, requested that Tulips provide her with information concerning its Colorado loans. When Tulips failed to respond to either request, the Administrator found reasonable cause to believe Tulips had engaged or was engaging in conduct in Colorado that violated the Uniform Consumer Credit Code (UCCC), §§ 5–1–101 to –9–102.5, C.R.S.2012, by making unlicensed supervised loans and charging excessive finance charges.

¶ 4 Similarly, the Colorado Attorney General found cause to believe that Tulips had engaged or was engaging in deceptive trade practices in Colorado in violation of the Colorado Consumer Protection Act (CCPA), §§ 6–1–101 to –1121, C.R.S.2012, for making loans without a required license.

¶ 5 The State served Tulips in Delaware with an administrative investigative subpoena ordering Tulips to produce various documents for inspection and copying.[1] When Tulips did not comply, the State applied for and obtained an ex parte order from the district court requiring Tulips to comply with the subpoena and produce the required documents. When Tulips did not comply with the order, the State commenced a contempt proceeding against it. Pursuant to C.R.C.P. 12(b)(1), Tulips moved to dismiss the proceedings to enforce the administrative subpoena for lack of subject matter jurisdiction.

¶ 6 The district court granted Tulips' motion, concluding that it lacked subject matter jurisdiction to enforce an investigative subpoena served out-of-state on an out-of-state entity. The court reached this conclusion based on "general subpoena enforcement principals [sic]" and the availability of a remedy in the Uniform Interstate Depositions

and Discovery Act (UIDDA), §§ 13–90.5–101 to –107, C.R.S.2012, and its Delaware counterpart, Del.Code Ann. tit. 10, § 4311.

### II.  Subject Matter Jurisdiction

¶ 7 The State contends that, contrary to the district court's determination, Colorado courts have subject matter jurisdiction to enforce investigative subpoenas issued to nonresidents and served out-of-state. We agree.

■ ¶ 8 Ordinarily, in considering a C.R.C.P. 12(b)(1) dismissal for lack of subject matter jurisdiction, we review the trial court's factual determinations for clear error and its legal conclusions de novo. *Consumer Crusade, Inc. v. Affordable Health Care Solutions, Inc.,* 121 P.3d 350, 352 (Colo.App. 2005). Here, however, there are no findings of fact to which we must defer. The issue presented here is solely a question of law as to which we may exercise our own independent judgment.

■ ¶ 9 "When a defendant opposes a claim on the basis that the court lacks subject matter jurisdiction, the objection is that the court has no authority or competence to hear or decide the case." *Krystkowiak v. W.O. Brisben Cos.,* 90 P.3d 859, 870–71 (Colo. 2004). "A court is said to have jurisdiction of the subject matter of an action if the case is one of the type of cases that the court has been empowered to entertain by the sovereign from which the court derives its authority." *Paine, Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508, 513 (Colo.1986)(quoting R. Casad, *Jurisdiction in Civil Actions* ¶ 1.01[1] (1983)).

¶ 10 In *Colorado Mills, LLC v. Sunopta Grains & Foods Inc.,* 2012 CO 4, 269 P.3d 731, a case involving a subpoena issued pursuant to C.R.C.P. 45, the supreme court stated:

We have long held that Colorado courts, as a matter of state sovereignty, have no authority to enforce civil subpoenas against out-of-state nonparties. In *Solliday v.*

---

1. Such a subpoena is often referred to elsewhere as a "civil investigative demand." *See, e.g., In re Oral Testimony of a Witness Subpoenaed Pursuant to Civil Investigative Demand No. 98–19,* 182 F.R.D. 196, 202 (E.D.Va.1998); *State ex rel. Miller v. Smokers Warehouse Corp.,* 737 N.W.2d 107, 110 (Iowa 2007).

*Dist. Court,* 135 Colo. 489, 313 P.2d 1000 (1957), for example, we held that an out-of-state nonparty " 'could not ... be forced by a Colorado court either to submit to the taking of his deposition [in another state] or to produce [documents]."

*Id.* at ¶ 13, 269 P.3d at 733; *see also Minnesota v. Dist. Court,* 155 Colo. 521, 525–26, 395 P.2d 601, 603 (1964) (Colorado court could not enforce a subpoena against a Minnesota nonparty).

¶ 11 The supreme court recognized that, like Colorado, other states hold that "enforcing civil subpoenas against out-of-state nonparties is left to the state in which the discovery is sought." *Colo. Mills,* at ¶ 17, 269 P.3d at 733. In support of this "rule," the court cited several out-of-state authorities, two for the proposition that the rule applied in the absence of statutory authority allowing or contemplating subpoenas compelling extraterritorial discovery from out-of-state nonparties. *Id.* at ¶ 17 n. 4, 269 P.3d at 734 n. 4.[2] The court also cited a case, *Silverman v. Berkson,* 141 N.J. 412, 661 A.2d 1266 (1995), as an example of when the "rule" could yield to statutory authority otherwise, namely, where

> although the state's rules of civil procedure prohibited a court from issuing a subpoena to out-of-state nonparties, through statute the legislature authorized the [state agency] to issue such subpoenas in connection with a[n] ... investigation, which [subpoenas] could be enforced by the state's courts with the expectation of full faith and credit from other states.

*Colo. Mills,* ¶ 17 n. 4, 269 P.3d at 733 n. 4.

¶ 12 We assume for purposes of this appeal that Tulips would be considered a "nonparty" under C.R.C.P. 45, because a civil complaint has not been filed. *But cf. In re Investigation of Attorney E.,* 78 P.3d 300, 302 (Colo. 2003)("[an] attorney, who is the target of the investigation, is a 'party' to the investigative proceedings").

¶ 13 From the court's discussion of the issue in *Colorado Mills,* we conclude that whether the district court was empowered to enforce the State's investigative subpoena depends upon whether the General Assembly authorized the State to issue, and Colorado courts to enforce, investigative subpoenas served out-of-state on out-of-state persons or entities. This involves an issue of statutory interpretation.

¶ 14 Statutory interpretation presents a question of law upon which we exercise our own independent judgment. *See Churchill v. Univ. of Colo.,* 2012 CO 54, ¶ 68, 285 P.3d 986, 1007 (appellate court reviews de novo issues of statutory interpretation). In interpreting statutes, our primary task is to ascertain and give effect to the intent of the General Assembly. *Chittenden v. Colo. Bd. of Soc. Work Exam'rs,* 2012 COA 150, ¶ 11, 292 P.3d 1138. To discern legislative intent, we look to the language of the statute itself, *People v. Summers,* 208 P.3d 251, 253–54 (Colo.2009), presuming that the legislature did not use that language idly, *People v. J.J.H.,* 17 P.3d 159, 162 (Colo.2001), and that the legislature intended "a just and reasonable result that favors the public interest over any private interest." *People v. Reed,* 932 P.2d 842, 843 (Colo.App.1996).

¶ 15 Section 5–6–106, C.R.S.2012, of the UCCC is titled "Investigatory powers." Under subsection (1) of that provision, the Administrator is granted investigative power, including the power to subpoena "any matter relevant to the investigation," if he or she "has reasonable cause to believe that a person has engaged in an act that is subject to action by the administrator." Subsection (2) provides, as pertinent here:

> If the person's records are located outside this state, the person at his or her option shall either make them available to the administrator at a convenient location within this state or pay the reasonable and necessary expenses for the administrator or the administrator's representative to examine them at the place where they are maintained.

Subsection (3) further states that "[u]pon [the person's] failure without lawful excuse to obey a subpoena or to give testimony, the

---

**2.** Those authorities were *Syngenta Crop Prot., Inc. v. Monsanto Co.,* 908 So.2d 121, 127 (Miss. 2005), and *Craft v. Chopra,* 907 P.2d 1109, 1111 (Okla.Civ.App.1995).

administrator may apply to the district court for an order compelling compliance." [3]

¶ 16 We read the provisions of section 5–6–106 against the backdrop of well-established law that

agencies possess implied and incidental powers filling the interstices between express powers to effectuate their mandates. Thus, the lawful delegation of power to an administrative agency carries with it the authority to do whatever is reasonable to fulfill its duties.

*Hawes v. Colo. Div. of Ins.*, 65 P.3d 1008, 1016 (Colo.2003) (citation omitted); *see also Meyerstein v. City of Aspen*, 282 P.3d 456, 467 (Colo.App.2011)("agencies possess implied and incidental powers to do all that is necessary to effectuate their express duties").

¶ 17 Viewing the statute in this light, we conclude that, when read together, the provisions of section 5–6–106 authorize the Administrator to issue, and Colorado courts to enforce, investigative subpoenas served out-of-state on out-of-state entities.

¶ 18 At oral argument, Tulips suggested that section 5–6–106 provided such authority only in the instance of the State investigating an in-state entity with out-of-state records. We do not, however, read the statute as being so limited. *See People v. Sorrendino*, 37 P.3d 501, 504 (Colo.App.2001)(courts do "not read into a statute an exception, limitation, or qualifier that its plain language does not suggest, warrant, or mandate"); *see also* 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 20:22 (7th ed. 2007) ("When a statute announces a general rule and makes no exception to that rule, a court is ordinarily not authorized to create an exception or add a qualifying provision not intended by the lawmakers.").

¶ 19 Indeed, to conclude otherwise "would create an absurd result wherein an out-of-state entity with sufficient contacts but no principal office in [Colorado] would be beyond the reach of the [Administrator's] investigative powers while within the reach of [Colorado] courts for purposes of the substantive action for which it is under investigation." *Everdry Mktg. & Mgmt., Inc. v. Carter*, 885 N.E.2d 6, 13 n. 8 (Ind.Ct.App. 2008).

¶ 20 Our reading of the statute is supported by the decision of another division of this court which held that Colorado courts have subject matter jurisdiction to enforce UCCC investigative subpoenas served on out-of-state entities. In *State ex rel. Suthers v. Cash Advance & Preferred Cash Loans*, 205 P.3d 389 (Colo.App.2008), *aff'd*, 242 P.3d 1099 (Colo.2010), the State, as here, initiated proceedings to enforce UCCC and CCPA investigative subpoenas issued to (1) two Internet lending businesses located in Nevada and (2) two out-of-state Indian tribes [4] which claimed affiliation with the lenders. Although the central issue in *Cash Advance* was whether the lenders and tribes were insulated under the doctrine of tribal immunity from civil or criminal liability, the division initially addressed whether the State's out-of-state investigative subpoenas were enforceable by Colorado courts.

¶ 21 Ultimately, the division concluded that "the trial court has authority to order [the out-of-state entities] to honor the Attorney General's requests for information, to the extent that they are reasonably calculated to lead to the discovery of information relevant to the [tribal immunity] determinations the trial court must make on remand." *Cash Advance*, 205 P.3d at 403.

¶ 22 The division based its decision on four grounds, one of which is applicable here. Based on its examination of the regulatory scheme established by the UCCC and the CCPA, the division concluded that the investigative subpoenas were enforceable because there was an important need to regulate payday lending, *id.* at 401 [5], and

**3.** *See* §§ 6–1–108, 6–1–109, C.R.S.2012 (containing provisions similar, but not identical, to those found in § 5–6–106).

**4.** The two tribes were the Miami Nation of Oklahoma and the Santee Sioux Nation, which is located in northeastern Nebraska. *See Cash Ad-* vance & Preferred Cash Loans v. State ex rel. Suthers, 242 P.3d 1099, 1104 (Colo.2010).

**5.** *See also Colorado v. W. Sky Fin., L.L.C.*, 845 F.Supp.2d 1178, 1181 (D.Colo.2011)(recognizing that "[t]he impact of the allegedly excessive

the UCCC and the CCPA provide statutory authority for the Attorney General to obtain documents and other information in the course of investigations of violations of those two statutory schemes.... [T]he State of Colorado generally has jurisdiction to investigate, criminally prosecute, seek declaratory and injunctive relief, and pursue civil remedies for conduct occurring within its borders. Violations of the UCCC and the CCPA ... have significant ... effects that would require the Attorney General's intervention.

*Id.* at 403.

¶ 23 The division's decision to remand the case to the district court for further proceedings to determine whether the lenders were sufficiently affiliated with the tribes to obtain tribal immunity from Colorado regulation was affirmed by the supreme court in *Cash Advance & Preferred Cash Loans v. State ex rel. Suthers*, 242 P.3d 1099 (Colo.2010). The supreme court, however, articulated a different test for determining whether tribal immunity applied to the lenders and concluded that that determination had to be made based on information that had already been voluntarily disclosed by the entities to the State. *Id.* at 1109–13.[6]

¶ 24 Tulips asserts that the supreme court's decision necessarily rejected the division's conclusion that Colorado courts are authorized to enforce investigative subpoenas served extraterritorially on out-of-state entities. We do not read the supreme court's opinion so broadly. In our view, the supreme court's decision to reject enforcement of the State's investigatory powers *at that early stage of proceedings* was based solely on the peculiarities of the tribal immunity doctrine; the decision had nothing to do with the authority to enforce investigative subpoenas on out-of-state, *non* tribal entities. With respect to this latter issue, we find persuasive the *Cash Advance* division's analysis of the State's regulatory authority under the UCCC. Consequently, we conclude that, as in

*Silverman*, 141 N.J. 412, 661 A.2d 1266, the General Assembly has, by statute, granted (1) the State the investigative authority to subpoena records from out-of-state nontribal entities and (2) Colorado courts the authority to enforce those subpoenas. Thus, the district court erred in dismissing, on subject matter jurisdiction grounds, the proceedings brought by the State to enforce the investigative subpoena in this case.

¶ 25 In so concluding, we necessarily reject, as misplaced, Tulips' attempt to equate the State's statutorily authorized investigative subpoena with C.R.C.P. 45 subpoenas in civil cases, for purposes of imposing on investigative subpoenas the limitations on enforcement of C.R.C.P. 45 subpoenas. *See U.S. Dep't of Educ. v. Nat'l Collegiate Athletic Ass'n*, 2006 WL 3198822, *3 (S.D.Ind. No. 1:06–cv–1333–JDT–TAB, Sept. 8, 2006) (unpublished order) ("The distinctions [between judicial subpoenas and administrative subpoenas] are important to determine the relevance required, and the judicial limits that may be placed upon subpoena enforcement. Judicial subpoenas and administrative investigatory subpoenas are fundamentally different. Unlike a discovery subpoena, which is an exercise of judicial authority, an agency's investigatory subpoena arises from Congress' power under the 'necessary and proper' clause, to delegate authority to an administrative agency."), *aff'd*, 481 F.3d 936 (7th Cir.2007); *see also Feigin v. Colo. Nat'l Bank*, 897 P.2d 814, 819 (Colo.1995)(holding C.R.C.P. 45 inapplicable to statutorily authorized investigative subpoenas issued by Colorado's securities commissioner).

¶ 26 We also reject, as misplaced, Tulips' argument that, as found by the district court, the UIDDA provided the applicable avenue by which the State could procure the desired materials from Tulips. As argued by the State, the UIDDA applies only to "discovery" in pending judicial actions; it does not apply to regulatory agency preliti-

---

charges" associated with pay-day loans arranged over the Internet is "felt in Colorado").

**6.** *See Cash Advance*, 242 P.3d at 1120 (Coats, J., concurring in part and dissenting in part) (characterizing the effect of the majority's opinion as

making it "virtually certain" that, in future cases, "the object of the state's investigative subpoenas ... need not provide any information until the state has disproved its claim to be an arm of a tribe").

gation investigations. *See generally* § 13–90.5–102 official cmt., C.R.S.2012 (the UIDDA "is limited to discovery in state courts"); *see also* § 13–90.5–102(5) (defining "subpoena" as a particular type of document "issued under authority of a court of record"); Del. Code Ann. tit. 10, § 4311 (same); *Youngs v. Indus. Claim Appeals Office,* 2012 COA 85, ¶ 34, —— P.3d —— (" 'courts of record' ... do[ ] not include ALJs," and courts "are not at liberty to apply statues expressly limited to judicial proceedings to administrative proceedings").

¶ 27 For the foregoing reasons, we conclude that Colorado courts do not lack jurisdiction to enforce UCCC-authorized investigative subpoenas served out-of-state on nonresident entities, and that the district court erred in concluding otherwise.[7]

¶ 28 The order dismissing the case is reversed, and the case is remanded to the district court for further proceedings.

Judge ROY and Judge RICHMAN concur.

---

7. In light of the manner in which we have resolved this case, we need not address whether the CCPA also authorized the issuance and enforcement of the subpoena in this case.